**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HANG LI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPIRIT AEROSYSTEMS HOLDINGS, INC., TOM GENTILE III, and MARK J. SUCHINSKI,<br><br>Defendants. | Case No. 1:23-cv-03722-PAE |

**HANG LI'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF MICHAEL D. JOSEPH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL <u>OF LEAD COUNSEL</u>**

Lead Plaintiff Movant Hang Li ("Li") submits this memorandum of law in opposition to the competing motion of Michael D. Joseph ("Joseph") for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 11).

## I. INTRODUCTION

Li and Joseph filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* Dkt. Nos. 8, 11.

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant or movant group "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

Here, Joseph seemingly failed to provide a complete and coherent submission of his transactions in connection with his opening motion. As such, Li and the Court are not able to accurately determine Joseph's true financial interest. As explained further below, many of Joseph's call options expired "in the money" which would trigger a purchase or sale of common stock—but Joseph does not provide the purchase or sale data. Instead, Joseph "assume[s]" that "[o]pen option positions as of the maturity date [were] closed out without exercise." This makes

1

no sense and ignores how call options work. Courts routinely disqualify movants who submit incomplete and/or incomprehensible transaction information, and the same result is warranted with respect to Joseph.

Setting aside the fact that Joseph did not submit complete transaction information, the information he did submit demonstrates that he engaged in substantial and complex options transactions, specifically, day trading and selling call options short. Courts routinely disqualify movants that engage in such trading because it is likely atypical of the trading of the rest of the class, and because short selling opens up the movant to the unique defense that he did not rely on the integrity of the market price for the company's shares. Joseph should be disqualified on the same basis.

Finally, even considering the flawed transaction information Joseph submitted, it appears that Li has the largest financial interest in the relief sought by the class. Li also satisfies the typicality and adequacy requirements of Rule 23. As such, Li is the presumptively most adequate plaintiff. Since there is no basis to rebut this presumption, Li should be appointed as lead plaintiff, and his selection of counsel should be approved.

II.   **JOSEPH SHOULD BE DISQUALIFIED FROM CONSIDERATION FOR APPOINTMENT AS LEAD PLAINTIFF BECAUSE HE DID NOT SUBMIT REQUIRED TRANSACTION INFORMATION**

Joseph should be disqualified from consideration for appointment as lead plaintiff because his certification and loss chart are seemingly missing critical transaction information. Joseph states in his loss chart that "[o]pen option positions as of the maturity date are assumed to have been closed out without exercise." *See* Dkt. No. 13-4. This is nonsensical. If the market price of Spirit stock is above the call option strike price at the expiration date of the option ("in the money"), the call option would be exercised at the strike price, and Joseph would either buy or sell Spirit stock, depending on whether he bought or sold the call option. For example, Joseph

bought many SPR Jan 21 '22 $44 Call options over multiple days. *See* Dkt. No. 13-3. While he disposed of much of these contracts by selling them back into the market, he was still holding 34 contracts on January 21, 2022 (the expiration date). *Id.* The closing price of Spirit stock on that day was $44.88—which is above the strike price of $44.00. As such, Joseph should have a transaction (likely a purchase) of 3,400 shares of Spirit stock (100 shares per contract) on January 21, 2022, but these trades are missing from his certification and loss chart. This same issue is present for many of Joseph's call options transactions—it appears that there are many stock purchases and sales related to his options transactions that Joseph did not report. Without that information, Li and the Court cannot accurately determine Joseph's financial interest.

Joseph also claims in his loss chart that his "[o]pen option positions as of Jun 28, 2023 are assumed to be closed out at the intrinsic value based on the $27.85 PSLRA price." Dkt. No. 13-4 This too does not make sense—why would one assume an open option is closed out? For example, Joseph claims to have a loss of $4,180 on his purchase of 5 contracts of the SPR Jan 19 '24 $33 Call. *See* Dkt. No. 13-4. However, the $4,180 figure is simply the amount Joseph paid to purchase the 5 contracts. *See* Dkt. No. 13-3 at 8. As of the date of this filing, the options will not expire for another 6 months. They must have some present value that offsets Joseph's claimed "loss," but Joseph does not include or account for that value.

The PSLRA requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . . that . . . sets forth *all of the transactions* of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u–4(a)(2)(A)(iv) (emphasis added). Accordingly, Joseph should be disqualified from consideration for failing to submit all of his transactions as required for a coherent calculation of his claimed loss in connection with his motion for appointment. *See*

*Rodriguez v. DraftKings Inc.*, No. 21-cv-5739, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (movant's "careless errors weigh heavily against his appointment as lead plaintiff"); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-cv-12084, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant who submitted a certification that "omitted certain Class Period transactions"); *Karp v. Diebold Nixdorf, Inc.*, No. 19-cv-6180, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("The Court thus finds that the errors in the Aroras' submissions further militate against appointment and render them inadequate to serve as lead plaintiff.") (internal quotation marks and brackets omitted); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14-cv-10020, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (rejecting a movant with discrepancies in its financial data); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) ("[E]rrors in Erenoglu's sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class.").

### III. JOSEPH SHOULD ALSO BE DISQUALIFIED BECAUSE HE ENGAGED IN SUBSTANTIAL OPTIONS TRADING, DAY TRADING, AND SHORT SELLING

Considering the information Joseph did submit, however, demonstrates that he is inadequate, atypical, and subject to unique defenses. First, during the class period, Joseph sold more than $1 million worth of call options contracts, much of it without first owning the contract he was selling. *See* Dkt. No. 13-4. Selling call options contracts this way is similar to selling stock short—both are bets that the stock price will go down.[1] Second, Joseph also engaged in day trading. For example, on October 18, 2021, Joseph bought and sold more than 2,000 shares of

---

[1] *See Investopedia*, "What Is a Short Call in Options Trading, and How Does It Work?," available at https://www.investopedia.com/terms/s/short-call.asp (last visited July 14, 2023) ("A short call is an options position taken as a trading strategy when a trader believes that the price of the asset underlying the option will drop. Therefore, it's considered a bearish trading strategy.").

4

Spirit stock. Dkt. No. 13-3. Similarly, on March 8, 2022, Joseph sold 75 contracts of the Jul 15 '22 $42 Call and then immediately repurchased them the same day. *Id.* Third, Joseph engaged voluminous options transactions during the Class Period. Indeed, his certification includes hundreds of transactions on 5 pages, nearly 3 full pages of which are just options transactions.[2]

The fact that Joseph was day trading and short selling through his substantial options transactions is disqualifying. *See DraftKings*, 2021 WL 5282006, at *10 (declining to appoint a short seller as lead plaintiff in part because his "short-selling and day trading leaves him vulnerable to attacks that he did not rely on the market price" and "the interests of the class disfavor exposing it to the risk that his history will dog him"); *see also Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-736, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (disqualifying movant who engaged in "short selling shares and buying to cover those short sales" because "[s]uch a trading practice would be atypical of the class as profit accrues when the price of the security decreases"); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 392 (D.N.J. 1998) (movant "will not be able to benefit from the fraud on the market theory to the extent he was a short seller"). Moreover, his extensive options trading is even further disqualifying because it renders Joseph atypical of the rest of the class and subject to unique defenses. *See Cook v. Allergn PLC*, No. 18-cv-12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (movant with heavy options trading will not "turn out to be typical of the average common stockholder" and appointing him would likely "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict").

---

[2] In contrast, Li submitted one page of 26 transactions, all which are purchases of Spirit common stock. *See* Dkt. No. 10-1.

As such, Joseph should be disqualified from consideration for appointment as lead plaintiff.

IV. **EVEN CONSIDERING JOSEPH'S FLAWED TRANSACTION SUBMISSION, LI IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF BECAUSEE LI HAS THE LARGEST FINANCIAL INTEREST**

The PSLRA does not specify a means of calculating the "largest financial interest," and "in the absence of statutory guidance or Second Circuit case law, the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 406-07 (S.D.N.Y. 2004).

In their discretion, courts have typically considered four factors to determine which movant has the largest financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (collecting cases).

Most courts in this District agree that the fourth factor, the largest financial loss, is the most important factor. *Id.* To calculate losses, courts typically use the last in, first out ("LIFO") methodology and exclude losses on securities that were not held at the time of a corrective disclosure. *See id.*; *see also DraftKings Inc.*, 2021 WL 5282006, at *5 ("Critically . . . the LIFO methodology excludes 'in-and-out' trades."); *Simco v. Aegean Marine Petroleum Network Inc.*, No. 18-cv-4993, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred

before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."). Notably, only losses are excluded—any gains are included and offset the movant's loss. *See Skeels v. Piedmont Lithium Inc.*, No. 21-cv-4161, 2022 WL 1236797, at *5 (E.D.N.Y. Feb. 4, 2022) ("Application of *Dura* leads to the exclusion of pre-corrective action losses only, not gains."); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[I]f . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Here, almost all of Joseph's options expired (or he closed his position) prior to the corrective disclosure alleged in the complaint, thus they must be excluded from the calculation of his financial loss. The complaint alleges only one corrective disclosure on April 13, 2023. *See* Dkt. No. 1 ¶¶ 3-4, 59-60. As illustrated by Joseph's loss chart, however, all but two of the options contracts he traded expired prior to April 13, 2023. *See* Dkt. No. 13-4. The only ones that did not expire were the SPR Oct 20 '23 $45 Call, and the SPR Jan 19 '24 $33 Call. *See id.* Joseph reported a gain of $10,005 on the SPR Oct 20 '23 $45 Call and a loss of $4,180 on the SPR Jan 19 '24 $33 Call, for a total net options gain of $5,825. As such, Joseph's actual financial loss on both stock and options was less than Li's financial loss. Therefore, Li has a larger financial interest than Joseph as measured by all four factors:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Stock Loss | Options Loss (or Gain) | Total Loss[3] |
|---|---|---|---|---|---|---|
| Li | 191,246 | 191,246 | $6,277,735.69 | $945,183.77 | $0.00 | $945,183.77 |
| Joseph | 119,359 | 112,010 | $4,069,054.72 | $945,856.64[4] | ($5,825.00) | $940,031.64 |

Since Li has the largest financial interest, filed a timely motion, and satisfies the preliminary requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## V.  THE PRESUMPTION THAT LI IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that Li is the most adequate plaintiff may be rebutted only upon "proof" that he "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-

---

[3] All loss values in this chart are normalized using the same 90-day average price to value losses on retained shares as was used in Li's financial interest analysis. *See* Dkt. No. 10-3.

[4] If Joseph attempts to claim that his gains from options should not be included and that the Court should only consider his common stock losses, Li still has the largest financial interest since Li purchased more shares, both gross and net, and has a larger net expenditure, while the difference in losses would be *de minimis*. *See City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 17-cv-1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) (holding movant with the largest financial interest under the first three factors was the presumptively most adequate plaintiff even though they had an approximately $36,000 smaller loss); *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, No. 06-cv-5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (a very slight difference in LIFO loss "cannot dictate such an important result" when the competing movant had more "gross purchases, net purchases, and net funds expended"); *see also In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (appointing movant with a 17% smaller loss, stating the losses are "roughly equal"); *Juliar v. Sunopta Inc.*, No. 08-cv-1070, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (holding that an approximately $30,000 difference on a loss of $210,993 was "minimal").

Regardless, such an argument should be rejected since Joseph has already conceded that such gains should be included in the financial interest analysis by including his option gains in the loss chart he submitted to the Court (Dkt. No. 13-4), and courts reject belated attempts to manufacture financial interests by changing methodologies after the initial motion. *See Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *3 (N.D. Ill. June 26, 2018) ("[C]ourts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method.") (collecting cases).

8

4(a)(3)(B)(iii)(II). No such proof can be presented. Li is not aware of any reason he would be incapable of serving as lead plaintiff. Li was the initial (and only) investor to file a complaint on behalf of the class. Li also has a Bachelor of Science in Computer Science and a Master of Engineering in Computer Science from Cornell University, and is an entrepreneur, CEO, and Co-Founder of an online fashion business with years of investing experience. As such, Li is more than adequate to represent the class and should be appointed as lead plaintiff, and Joseph is not entitled to further consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

## VI. LI'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel."). Here, Li selected Glancy Prongay & Murray LLP and Holzer & Holzer, LLC as co-lead counsel for the class. The firms filed the initial complaint in this action on behalf of Li and the class following an extensive investigation into the claims. The firms also have decades of experience litigating securities fraud class actions, including cases successfully pursued jointly. *See* Dkt. Nos. 10-4, 10-5; *Davis v. Yelp, Inc.*, No. 18-cv-00400, 2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) (granting final approval of settlement and noting "counsel risked significant amounts of their own funds and dedicated time and effort to litigate through the class certification process, the motion for summary judgment, expert retention, trial preparation, and the nearly $1 million counsel put at risk in advancing costs").

As such, the firms are more than adequate to represent the class, and Li's selection of

9

counsel should be approved.

## VII. CONCLUSION

For the foregoing reasons, Li respectfully requests that the Court grant his motion and enter an Order: (1) appointing Li as lead plaintiff; (2) approving Li's selection of counsel; and (3) denying Joseph's motion.

                                                Respectfully submitted,

DATED: July 17, 2023                        **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**HOLZER & HOLZER, LLC**
Corey D. Holzer
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Hang Li and Proposed Co-Lead Counsel for the Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On July 17, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 17, 2023, at New York, New York.

> */s/ Gregory B. Linkh*
> Gregory B. Linkh