Exhibit F

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION**

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> W. KENNETH PAXTON, in his official capacity as Attorney General of Texas, AND JANE NELSON, in her official capacity as Secretary of State of Texas, <br><br> *Defendants*. | Civil Action No. 1:24-cv-00472-DII <br><br><br> JURY TRIAL DEMANDED |

**DEFENDANT W. KENNETH PAXTON'S**

**<u>CROSS MOTION FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION

This lawsuit concerns a Request to Examine (RTE)[1] issued by the Texas Office of the Attorney General's (OAG) Consumer Protection Division to Spirt AeroSystems, Inc., a manufacturer of aircraft parts and a main supplier to Boeing. In recent years, multiple Boeing planes have either lost parts mid-flight or crashed entirely, resulting in the deaths of hundreds. A recent lawsuit revealed that several whistleblowers have accused Spirit of ignoring persistent manufacturing defects in the parts it delivers to Boeing. OAG is investigating Spirit, a Texas-registered company, for potentially deceptive trade practices related to these whistleblower allegations, in violation of Texas law.

Rather than face up to an investigation, Spirit chose to file this facial challenge to the 100 plus years old RTE statute, claiming it facially violates the Fourth Amendment and is unconstitutional in every application. Spirit claims that the RTE statute provides no opportunity for precompliance review—despite the OAG affording Spirit over a month to seek precompliance review in this court—and risks criminal penalties for noncompliance.

But Texas's Request to Examine statute ("RTE statute") is constitutional, in every application. It authorizes the Office of the Attorney General to issue administrative subpoenas pursuant to the State's visitorial powers, which have been recognized as valid by the Supreme Court for over a century. The RTE statute provides several different avenues for precompliance review within a reasonable time frame. Penalties for failure to comply with an RTE cannot be imposed until and unless the Attorney General commences a quo warranto suit in court, with all the procedural protections that a lawsuit provides. And there is no risk of a criminal penalty for failure to respond to an RTE. Though the RTE statute does technically contain a misdemeanor

---

[1] RTEs are administrative subpoenas authorized by Texas law at sections 12.151–56 of the Texas Business Organizations Code (the RTE statute).

provision, it is unenforceable by the Attorney General, and the Attorney General's office has no record of it having ever been enforced by any district attorney in Texas. Even if criminal prosecution were possible, the misdemeanor provision of the RTE statute is severable.

In other words, the RTE statute raises no Fourth Amendment problems and shares virtually nothing in common with the ordinance at issue in *City of Los Angeles v. Patel*, upon which Spirit's contemporaneously filed Summary Judgment Motion presumably relies. In truth, this facial challenge is Spirit's attempt at distraction—distraction from allegations that Spirit's misleading statements and deceptive trade practices contributed to planes and plane parts falling out of the sky. This Court should grant summary judgment to defendants on all counts and dismiss this case to allow the State's investigation to proceed.

## BACKGROUND

### I.    The Basis for OAG's Investigation

Spirit AeroSystems, Inc. ("Spirit") manufactures aerostructures for commercial, military, and business jets. ECF No. 1 ¶¶ 6, 12 (Compl. for Declaratory, Injunctive, and Other Relief). It is the main aircraft parts supplier to The Boeing Company ("Boeing"), which in turn is Spirit's primary customer. Statement of Proposed Undisputed Facts ("SPUF") ¶¶ 3–4. Spirit operates a facility near Dallas Love Field Airport to provide repair and maintenance services for its customers. ECF No. 1 ¶ 13. To operate that facility, Texas law requires that Spirit register as a foreign filing entity under the Texas Business Organization. *Id.* at ¶ 15 (citing Tex. Bus. Orgs. Code § 9.001).

In October 2018 and March 2019, two separate Boeing 737 MAX airliners crashed, leaving hundreds dead. SPUF ¶ 5. In response, regulators worldwide grounded the 737 MAX aircrafts due to safety concerns. *Id.* at ¶ 6. The components of Boeing aircrafts, including defective parts

manufactured and supplied by Spirit, have since come under scrutiny in various investigations. *Id.* at ¶¶ 7–8.

Before the revelations in the wake of the Boeing crashes, Spirit and its executives routinely touted the safety and quality of the company's products. For instance, Bill Brown, Spirit's Senior Vice President of Quality and Ops Engineering, publicly stated that Spirit has "a great quality system that ensures our parts are inspected and controlled and go out FOD [foreign object debris] free and defect free." *Id.* at ¶ 9. Spirit's publicly available Sustainability Report represented that Spirit is "dedicated to a Zero-Defect target, with no escapements to [its] customers" and that the company makes every effort to "ensure product quality and safety." *Id.* at ¶ 10.

There are now serious reasons to believe that these representations were false when made. For example, on May 3, 2023, a private class action lawsuit was filed in the Southern District of New York against Spirit by shareholders harmed by the company's failure to live up to its representations on product quality. *Id.* at ¶ 11. An amended complaint revealed that several former Spirit employees faced pushback after reporting concerns about persistent manufacturing defects. *Id.* at ¶¶ 15–18. One employee claimed that management often pressured quality-control workers to approve work knowing that the final products contained defects. *Id.* at ¶ 15. The complaint further revealed that Boeing had placed Spirit on probation in 2018 due to the large number of defects found in the fuselages that Spirit shipped to Boeing. *Id.* at ¶ 17. According to the complaint, Spirit's leadership and quality department knowingly failed to take adequate remedial action to ensure quality control. *Id.* at ¶¶ 15–18.

## II.    The Requests to Examine at Issue

On March 28, 2024, the Office of the Attorney General ("OAG") issued a Request to Examine ("RTE") to Spirit Holdings, requesting that the company produce documents relevant to the concerning revelations above, with a deadline of April 17, 2024. ECF No. 1-1 (providing 20