# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HANG LI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPIRIT AEROSYSTEMS HOLDINGS, INC., TOM GENTILE III, and MARK J. SUCHINSKI,<br><br>Defendants. | Case No. 1:23-cv-03722-PAE<br><br>**PLAINTIFFS' NOTICE OF RECENT DECISION** |

Attached hereto is the Transcript of Motions Hearing (the "Transcript") in the matter of *In re Boeing Company Securities Litigation*, E.D. Va. Case No. 1:24-cv-151 (Sept. 6, 2024), in which the Honorable Leonie M. Brinkema, ruling from the bench, denied The Boeing Company's ("Boeing") motion to dismiss a securities class action complaint alleging that Boeing misled investors about its quality and safety practices.

Judge Brinkema held that Boeing's statements were actionable and that the complaint alleged a strong inference of scienter. *See* Transcript at 27:20-28:9. The Court rejected Boeing's argument, finding that allegations including defendants' corporate positions, the receipt of safety reports, the overall importance of safety in the aviation industry, and whistleblower statements sufficiently alleged a strong inference of scienter. *See* Transcript at 31:17-33:15.

Also attached hereto is Judge Brinkema's Order dated September 6, 2024, denying Boeing's motion to dismiss "[f]or the reasons stated in open court." Plaintiffs respectfully submit that this recent decision is relevant to issues raised in Defendants' pending motion to dismiss (ECF 37) and Plaintiffs' opposition thereto (ECF 41).

1

Dated: September 13, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Garth Spencer*
Garth Spencer (GS-7623)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
gspencer@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer (*pro hac vice*)
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Co-Lead Counsel for Lead Plaintiff Hang Li and Named Plaintiffs Mike Drumright and Marco Amiotti*

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| IN RE THE BOEING COMPANY SECURITIES LITIGATION | ) ) ) ) |  |
| STATE OF RHODE ISLAND OFFICE OF THE GENERAL TREASURER, on behalf of the Employees' Retirement System of the State of Rhode Island, individually and behalf of all other similarly situated, | ) ) ) ) ) ) ) ) | 1:24-cv-151 (LMB/LRV) |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| THE BOEING COMPANY, et al., | ) ) |  |
| Defendants. | ) |  |

ORDER

For the reasons stated in open court, the Defendants' Motion to Dismiss for Failure to

State a Claim [Dkt. No. 50] is DENIED; and it is hereby

ORDERED that Defendants file an answer within 28 days.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 6th day of September, 2024.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division


OKLAHOMA FIREFIGHTERS PENSION     :     Civil Case
AND RETIREMENT SYSTEM,            :     No. 1:24-cv-1200
                                 :
          Plaintiff              :
     v.                          :
                                 :
DAVID L. CALHOUN, et al.,        :
                                 :
          Defendants             :
.............................    :     ........................

IN RE: BOEING COMPANY            :     Civil Case
SECURITIES LITIGATION            :     No. 1:24-cv-151
                                 :
                                 :     September 6, 2024
                                 :     10:40 a.m.
.............................    :     ........................

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS IN        MAXWELL RALPH HUFFMAN
CASE NO. 1:24-CV-1200:       SCOTT + SCOTT, LLP
                             600 W. Broadway
                             Suite 3300
                             San Diego, CA  92101
                             619-233-4565

                             CHARLES WILLIAMS
                             WILLIAMS & SKILLING, PC
                             4801 Radford Avenue
                             Suite A
                             Richmond, VA  23230
                             804-447-0307


FOR THE INTERVENOR OHIO      SUSAN REBBECA PODOLSKY
PUBLIC EMPLOYEES             LAW OFFICES OF SUSAN R. PODOLSKY
RETIREMENT SYSTEM AND        1800 Diagnal Road
STATE TEACHERS RETIREMENT    Suite 600
SYSTEM OF OHIO:              Alexandria, VA  22314
                             571-366-1702

2

FOR THE INTERVENOR OHIO          JAVIER BLEICHMAN
PUBLIC EMPLOYEES                 BLEICHMAR FONTI & AULD, LLP
RETIREMENT SYSTEM AND            300 Park Avenue
STATE TEACHERS RETIREMENT        Suite 1301
SYSTEM OF OHIO:                  New York, NY  10022
                                 212-789-1340

                                 DERRICK FARRELL
                                 BLEICHMAR FONTI & AULT, LLP
                                 3411 Silverside Road
                                 Baynard Building
                                 Suite 104
                                 Wilmington, DE  19810
                                 302-499-2122

FOR THE INTERESTED PARTY         CRAIG CRANDALL REILLY
STATE OF RHODE ISLAND            LAW OFFICE OF CRAIG C. REILLY
OFFICE OF THE GENERAL            209 Madison Street
TREASURER ON BEHALF OF           Suite 501
THE EMPLOYEES' RETIREMENT        Alexandria, VA  22314
SYSTEM OF RHODE ISLAND:          703-549-5354


FOR THE PLAINTIFFS IN            CHRISTOPHER CHAD JOHNSON
CASE NO. 1:24-CV-00151:          BRENT MITCHELL
                                 JONATHAN ZWEIG
                                 ROBBINS GELLER RUDMAN & DOWD, LLP
                                 420 Lexington Avenue
                                 Suite 1832
                                 New York, NY  10170
                                 212-432-5100

                                 STEVEN JEFFREY TOLL
                                 COHEN MILSTEIN SELLERS & TOLL
                                 1100 New York Avenue, NW
                                 Suite 500, West Tower
                                 Washington, DC  20005-3965


                                 CAROL CECILLIA VILLEGAS
                                 LABATON KELLER SUCHAROW, LLP
                                 140 Broadway
                                 New York, NY  10005
                                 212-907-0700

FOR THE DEFENDANTS:          BENJAMIN LUCAS HATCH
                             MCGUIRE WOODS, LLP
                             101 W. Main Street
                             Suite 9000
                             Norfolk, VA  23510
                             757-640-3947

                             RICHARD CARL PEPPERMAN, II
                             SULLIVAN & CROMWELL, LLP
                             125 Broad Street
                             Room 2740
                             New York, NY  10004
                             212-558-4000

                             JUDSON OWEN LITTLETON
                             SULLIVAN & CROMWELL, LLP
                             1700 New York Avenue, NW
                             Suite 700
                             Washington, DC  20006
                             202-956-6982


OFFICIAL COURT REPORTER:     REBECCA STONESTREET, RPR, CRR
                             U.S. District Court, 9th Floor
                             401 Courthouse Square
                             Alexandria, Virginia  22314
                             (240) 426-7767


                        ( Pages 1 - 42)


          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

4

**P R O C E E D I N G S**

COURTROOM CLERK:  Civil Action Numbers 1:24-cv-1200, Oklahoma Firefighters Pension and Retirement System versus Calhoun, et al., and 1:24-cv-151, In Re: Boeing Company Securities Litigation.

THE COURT:  I'm not sure we're going to have enough room for everybody, so only the lawyers who are going to speak really need to be in the well.  But it makes sense to have these two cases somewhat at the same time.

COURTROOM CLERK:  Will counsel please note their appearance for the record, first for the plaintiffs.

MS. PODOLSKY:  Susan Podolsky for the proposed intervenors, the two Ohio retirement systems.  I have with me Derrick Farrell and Javier Bleichmar of the Bleichmar Fonti firm, who are assisting me today.

Do you want me first at this table?

THE COURT:  Yeah, I'm going to hear the Oklahoma case first.  All right?  But I thought as many of you who can fit who are going to be talking should be in the well.

MS. PODOLSKY:  We can vacate --

THE COURT:  We're going to hear you-all first.

MS. PODOLSKY:  Thank you, Your Honor.

THE COURT:  So who is here for Boeing after the Oklahoma case?

MR. HUFFMAN:  Good morning, Your Honor.

Maxwell Huffman on behalf of Oklahoma.

THE COURT:  Okay.  Mr. Reilly?

MR. REILLY:  Good morning, Your Honor.  In the shareholder case, 151, Craig Reilly, liaison counsel for the plaintiff class.  With me is lead plaintiff counsel from the Robbins Geller firm, Chad Johnson, Jonathan Zweig, and Brent Mitchell.  And with the Court's permission, Mr. Johnson will address the Court.

THE COURT:  All right.  That's fine.

MR. TOLL:  Good morning, Your Honor.  Good to see you again.  Steven Toll, co-liaison counsel, also for the plaintiffs.  And with me is lead counsel Carol Villegas.

THE COURT:  Very good.  Actually, if a couple of you want to sit in the jury box, that's fine.  You're the last case.

All right.  So I want to hear first on this motion to intervene, which is -- oh, I'm sorry.

MR. HATCH:  Good morning, Your Honor.  Ben Hatch, McGuireWoods, on behalf of the defendants in both of the matters that you called.  And with me is Mr. Rick Pepperman and Mr. Jud Littleton of the Sullivan & Cromwell firm, also for the defendants.

THE COURT:  Very good.

So the motion to intervene is fascinating.

MS. PODOLSKY:  I hope that's a compliment, Your Honor.

THE COURT:  I'm not sure, Ms. Podolsky.  All right.  I

finally understand it.  I didn't understand it when I first saw it, because traditionally when one intervenes, one joins the lawsuit.

My understanding is if you-all come in and you join the lawsuit as a party, it deflects or defeats the whole point you're trying to make by asking for a stay, correct, because you want to be able to continue the Delaware Chancery 220 proceeding?

MS. PODOLSKY:  We do want to continue the 220 proceeding, that's correct.

THE COURT:  Yes.

MS. PODOLSKY:  And we're moving to intervene for the limited purpose of asking for a stay.

THE COURT:  Right.

MS. PODOLSKY:  I don't think they're at odds, the two.

THE COURT:  No, but -- well, the point is, I'm perfectly willing to let you intervene --

MS. PODOLSKY:  Yes, ma'am.

THE COURT:  -- but I'm not going to grant the stay.  And I don't think that's really what you want, is it?  Because if I let you intervene, then you become a party in this case.  Would you not then become a -- and you are.  I mean, you represent a pension fund that invested in Boeing.  Right?

MS. PODOLSKY:  Two retirement systems that invested, yes, ma'am.

7

THE COURT:  Right.  Two retirement systems.  And you're bringing a shareholder case.  Right?  Because you're claiming that the officers who you've named as defendants, or the officers who are defendants in the litigation, in the Oklahoma -- I'm calling it the Oklahoma case.  Our first case is the Rhode Island case.  There are too many states named in this thing.

But it's a derivative class action case, or a derivative shareholder case that you're trying to get to be part of, and ultimately, if there is a judgment against Boeing for misconduct, your clients may very well get some benefit from it.  Right?  Yes or no?

MS. PODOLSKY:  In the derivative case?

THE COURT:  Well, in the derivative case.  You're looking for damages ultimately, aren't you?

MS. PODOLSKY:  But in a derivative case, the damages go to the company.

THE COURT:  Yeah, I know.

MS. PODOLSKY:  Right.  So it's not -- it's different from Mr. Reilly's case in that the damages don't go to the shareholders.

And if I could back up for a moment and make sure I have explained properly so that the Court understands.  The 220 action in the Delaware Court of Chancery is not a -- it's not a merits derivative --

8

THE COURT:  It's for evidence.  You're trying to get evidence.  I understand.  And your concern is that if you don't get this additional evidence, then if a motion to dismiss is filed in the Oklahoma case, and if that motion were granted, that there might be some precedential effect of that decision.

MS. PODOLSKY:  That's correct.  There's a motion to dismiss due on Monday that Boeing -- under the current schedule, Boeing would file.  Boeing would -- presumably, my best guess, Boeing would file the motion and challenge demand futility as a threshold issue; in other words, that the shareholders -- it is futile for the shareholders to make a demand on the Board, for the Board to pursue the claim that the company has, because there's a substantial likelihood of liability on behalf of the majority of the Board so therefore the shareholders take over the derivative claim.

And so the question is whether it's futile or not futile to make that demand.  And there's an entire legal analysis that goes to that question, and it is a threshold question.

So I would expect Boeing to make a motion to dismiss the plenary action on that ground, and an adverse -- and that would be based on the current complaint, the one that's filed by Scott & Scott in Oklahoma Fire.  An adverse decision there in which the Court grants the motion to dismiss does potentially have preclusive effect on anyone else who wants to bring a

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

9

plenary action at all.  Because the Court could essentially say demand is futile, and since that's a threshold requirement, it has possible -- there's a good possibility that it has preclusive effect all around.

THE COURT:  But that's all hypothetical.

MS. PODOLSKY:  Not -- no, no.  No, no, it isn't.  It isn't.  It is because it hasn't happened; it's not because it has happened in other cases.  And there's a case that we cite and that goes back and forth, California State Teachers that involves Walmart.  It goes up and down and in and out of the Eight Circuit and in and out of the Delaware Supreme Court, and the ruling there is that the judgment on futility by a court has preclusive effect everywhere else.

Now, I mean, are there arguments that go back and forth?  Sure.  But the problem, as Chancellor Bouchard identified in the first Delaware -- I mean, the first Boeing case, excuse me, *Boeing 1*.  We've attached the transcript.  The same thing happened there, the same set of circumstances and the same scenario.

And just to point out that these cases are often brought in Delaware because it is the premier court in dealing with these sorts of actions.  That's where the derivative cases usually are brought, and that is where a 220 action is brought.  And Chancellor Bouchard said, why would we impose the risk of that happening?  Why take the risk?  I don't want to take the

risk, realizing full well that there is a very real risk.  And he was citing -- he was going back to that Walmart case that I was just discussing.

So there is a very real risk.  It's not hypothetical and it's not speculative at all.  And the prejudice that comes from the risk is substantial.  It's done.  The whole thing is over.  And so if that's correct - and, of course, I say that it is - then what you are measuring is a very real risk of preclusive effect completely.  You're going up and down on a complaint that's been filed -- and with no disrespect to Oklahoma Fire or Scott & Scott at all, but that complaint is based on an incomplete record, a record with 77 internal -- yes, 77 internal documents and a lot of public allegations.

What we're seeking to do is to obtain more internal records that are key both to the allegations that this complaint already has, that are key to the decision on futility, your decision on futility, and that are key to any additional or other legal claims or legal theories that could be developed.

So, for example, again, in the first Boeing case, the chancellor stays the derivative action, the plenary action, in order to allow the books and records process to complete, the 220 process, stating very clearly that there is a very real risk of preclusive effect and it's better to have a complete and full and robust record.

Several firms file a plenary action.  The court there

11

chooses, similar to how this court does it in a securities action or an antitrust action or a consumer action, chooses the best complaint, the best group to present that complaint.  The defendant, Boeing, takes its shot at the very best complaint and the very best set of facts that are available.

That's what we seek to do, is to make sure that the very best set of facts and the very best complaint is brought to a court and a motion to dismiss, which could have preclusive effect.

THE COURT:  All right.  Now, let me ask you, what's the normal timeframe that it takes for one of these 220 proceedings to go forward?

MS. PODOLSKY:  So I'll answer in two or three pieces.  I will first tell you that in our case there is a deadline for substantial production by Boeing on October 4th.  So we expect to have substantial production by October 4th, and there is no reason why -- no reason that I'm aware of why that wouldn't occur.  So we would have substantial production of the underlying books and records by October 4th.

There is an order that has set a November 26th trial of the books and records, and we have attached at the back end of our exhibits - I think it's J through whatever the last number is - a series of orders from the courts that show, in the ones that we're citing, 13 days, maybe 16 days, maybe 39 days for a decision.  I'm absolutely positive there are some that are more

12

and I'm sure there are some that are less.  But to answer your specific question, it is a very quick process, and the referring, the assigning order from the chancellor recognizes that it's an expedited process, and says that Delaware expects to complete it within 90 days.

I will also tell you that here, we have a very good relationship with Boeing.  We have been negotiating the two letters that we sent them, the demand letters.  They have agreed to produce a lot of documents.  So the substantial production deadline applies to what they've already agreed to produce.  The point of the November 26th trial or hearing would be to rule on whatever delta is left over.  So we've asked for documents, they've agreed to produce some; that negotiation will continue. If on November 26th there is still a delta, that's what goes to a hearing.

There is a good chance that there isn't a hearing. Right?  We do have a good relationship with Boeing.  If we can resolve it, which would be preferential for everybody, we would do that.  If we could resolve it before November 26th, we would do that, and I would let the Court know, obviously, right away and we could proceed directly.  If we can't resolve it and we have to go on November 26th, it is, I am very sure, a whittled-down delta of documents, a much smaller set of documents.

And as to the documents, what I would point out to the

13

Court is that what we're seeking really is critical to this process, the process being a plenary derivative action.  What we're seeking are the internal records that obviously have not yet been produced, and they go to a couple of critical categories in this complaint as well as to other legal theories.

And in *Boeing 1*, which we cite in our papers, the decision on the motion to dismiss there which was on the grounds of futility, where we started, that chancellor, Chancellor Zurn, is citing the 220 documents in her decision about futility.  So the 220 documents that we're seeking go to the strength of the complaint and go to the strength of the allegations as to futility, as well as the strength of the underlying allegations as to misconduct or egregious conduct or whatever phrase you want to use.

So therefore, what we're looking for -- and I can tell you what we have.  Let me start with what we have that our colleagues do not have, are Aerospace Safety Committee materials.  So the complaint that Oklahoma Fire has filed references the Aerospace Safety Committee and the minutes from the committee in 2022, 2023, some -- a bit in 2024.  What we have now are the underlying presentations, so we have the internal documents that go to -- that are the level below the actual minutes for that committee.

And it is that committee, the Aerospace Safety Committee, that is in charge of implementing and monitoring the

safety systems within Boeing.  So that is -- and it's a board level committee and it's extraordinarily important, because whatever reaches the board -- because one question will be, what did the board know and when did the board know it.  Whatever reaches the board through a formal channel comes through this committee.  And so we've asked for all of the materials that underlie the minutes and that are relevant to the meetings, the monthly meetings that the committee has.

We've also asked for the whistleblower complaints.  Now, the complaint that you have before you at present references quite a few - I think maybe five or six - whistleblowers, and their opposition brief references five or six whistleblowers.  It might be the opposition and not necessarily the complaint that actually names them.  But the key point here, Your Honor, is that the allegations in the complaint about what the whistleblowers have to say come from public records, testimony before Congress, testimony before an expert panel, interviews with a newspaper, interviews with a television station.

What we're asking for are the actual complaints.  Because there is what there is in the public record, but there's what's going on internal at Boeing.  Right?  So are these people complaining within Boeing?  They say they are publicly, but are they?  Are they complaining within Boeing?  Are they reporting up to the system?  Is the safety committee hearing something

15

from them?  Are there informal channels or formal channels by which these whistleblower complaints, other whistleblower complaints, other employee safety concerns are being routed up the levels of management and up to the board?

The complaint doesn't have that material.  We have asked for that material and we expect to get it.  Boeing has agreed to give us the complaints that are going up through formal channels.  We haven't yet reached agreement - and hopefully we will - on complaints, if there are complaints, that go through informal channels.

And so those are critical because it goes to what -- it goes to the two pieces -- the two bases, I would say, that can be used to establish liability on behalf of the Board.  Right?  So the Board has a duty to implement a safety system, particularly on something that is mission critical.

There's a case called *Marchand* that was about ice cream.  There was no safety system on the safety of the ice cream.  The Court held that that was a mission critical piece, right, because it's all about the ice cream.  If you don't have a food safety system implemented and people get listeria, that's a very serious problem.

We have the same thing here.  Right?  This is about plane safety.  If plane safety isn't mission critical to Boeing, then I'm not entirely sure what is.  So there is the reporting system, which is a formal reporting system.  And Boeing has

16

implemented a system, but whether it's working and whether it's being properly implemented and whether it's being properly overseen by the Board and by the Board level committee is critical.

The red flags that come up through whistleblower complaints or through other channels, employee concerns, and there's a program at Boeing that I understand is called the Speak Up program, that also funnels up, or it should be funneling up. Right? So there are these two ways where the safety committee and the Board are supposed to learn about employee concerns about safety. Those internal records are what we are seeking. They are not -- they have not yet been produced, so this complaint does not have the benefit of those records.

The 2024 Board materials that we're seeking -- I take that back. We're seeking 2024 Board minutes. So Boeing does not have, has not formalized, its minutes, the Board monthly minutes, for at least March through the present and maybe February through the present. I can't honestly remember. Right? So the Board meets, there are minutes; at the next monthly meeting, the minutes are approved, you have a formal set of Board minutes. Right? That's the normal process.

For 2024, after this plane crash in January, there are no formal approved Board minutes yet. They're not there. We've asked for them, we should be getting them, but at present they

17

are not there.

And the reason that I'm bringing all of this to your attention is because all of this information, this internal information, is critical to being able to file a robust, completely factually based record on which you can make -- or whatever court it is makes a decision on a motion to dismiss. Because, as I said, it's a threshold issue. It could have preclusive effect. It could be the case where it goes up or down on one --

THE COURT: But what if the Court were satisfied that the complaints as currently written are sufficient? Then there is no injury or damage or problem other than what I see as potentially huge inefficiencies in the discovery process for not just this case but the other case as well. Because I'm hearing huge amounts of overlap, that the same information is going to be relevant in both this case and the other case.

MS. PODOLSKY: And I understand -- when I saw the Court's order, I understood that to be the issue immediately. And I understand that there's an efficiency concern from the Court's perspective, and if we get that far down the road, there should be or there ought to be - and certainly if I were involved, there would be - ways to address the inefficiencies. Right? There's no question about that.

As a threshold matter, I would say that a potential overlap in discovery is not a reason to deny the ability to go

out and get a complete factual record now.  And I don't think that the Court can make a decision about this complaint yet.  And to the extent that the Court sees similar underlying conduct, or misconduct, or however you want to phrase it, I understand that.  But the legal analysis of Mr. Reilly's complaint and the securities complaint, the 10(b), is an entirely different animal from the analysis under a derivative complaint.

So if the Court is looking at Mr. Reilly's complaint and is seeing sufficiency, and is thinking that therefore this complaint has to be sufficient also, I would just caution the Court that the 10(b) case is about the false statements and about pleading particularized facts under Rule 9(b) and its progeny.  This case is about -- is different.  It's about demand futility as a threshold issue.  So the motion to dismiss in this case is not about whether the statements were false or not, it's about the futility of the demand.  It's an entirely different legal analysis, and takes into -- and, I mean, it has the same -- there is the same -- not the same.  There is a requirement for particularized facts, for sure.  But the legal analysis is an entirely different animal, entirely different.

So, for example, the Court could probably not fairly say, hypothetically:  I'm sustaining Mr. Reilly's complaint, or part of Mr. Reilly's complaint, and therefore, Boeing, I don't want to hear a motion to dismiss from you in the derivative

complaint on the 9th because I've now disposed of everything. That's not true. I don't mean to speak for Boeing, but I'm quite sure Boeing would come up to you and say: No, no, no, there are grounds upon which we want to move in the derivative case on Monday that really aren't touched by what you're doing today on Mr. Reilly's complaint.

They aren't touched at all because the derivative case is such an entirely different animal and the legal analysis is so entirely different that there is a deferent body of law that governs what happens in the derivative case and whether the complaint in the plenary action is or is not sufficient. It's an entirely different body of law, and I've sadly spent quite a few hours trying to parse through it.

So I understand the Court's concern, and I understand the Court's -- I understand the efficiency point. There's no question about that.

THE COURT: Let me ask you this. Is there any restriction -- if you obtain documents through this process in Delaware, is it like FTC processes where sometimes the information that's been obtained can't be shared? In other words, can Mr. Reilly, on behalf of his client, go and say: Well, you've got these documents; we want them now?

MS. PODOLSKY: No, it cannot be shared.

THE COURT: That's what I thought.

MS. PODOLSKY: The answer is, no, it cannot be shared.

THE COURT:  That's what I thought.

MS. PODOLSKY:  So again, it is -- I understand there's a nondisclosure agreement with respect to what Boeing is giving us now, but discovery might be different.

You're asking about Mr. Reilly's case, though.  Right?

THE COURT:  Yeah.

MS. PODOLSKY:  So, no, I think there is a nondisclosure agreement that governs what Boeing is giving us now.  We cannot share it with Mr. Reilly at this moment.

And this is why I'm trying to -- what I'm trying to drive home, is that these --

THE COURT:  You can't -- I'm sorry, you can't share either with counsel for Oklahoma?

MS. PODOLSKY:  So that's an interesting question.  Right?  And the answer to that is no, and the reason is that by filing the plenary action, Scott & Scott and Oklahoma Fire have essentially said, we are satisfied --

THE COURT:  That we have enough evidence to go forward.

MS. PODOLSKY:  Correct.  And so that cuts off the 220 process for them.

THE COURT:  For them.

MS. PODOLSKY:  It doesn't cut it off for -- and there are other groups out there.  Right?  It's not just us and Scott & Scott.  There are other groups who made demands upon Boeing also.

So that's why I'm saying there are two very different animals. The underlying facts, the conduct you may have identified as being substantially similar -- and I'm not quibbling with the fact that this is about the planes and safety and safety concerns. That's true. But the paths to liability are entirely different, entirely different, and the damages are different and the parties are different. Right? Because it's the company that's the damaged party in the derivative action and it's the stockholders in Mr. Reilly's 10(b) case.

So I understand the overlap, and if it were me and I were going forward with a plenary action, knowing the Court's concern, I would do everything I can to work with Mr. Reilly and his group if you were to sustain that complaint. And I think any lawyer with any sense would do that. But I don't think right now the Court can try to push the cases together or consolidate them or try to make them run on the same track or try to make them run together at the moment because of the very strong differences.

The other point that I would make with respect to the derivative process is, it's the reverse of what we have when I mentioned earlier in the consumer cases, in the antitrust cases, and the securities cases. In those cases, file a complaint, other groups come in, the Court decides who the lead plaintiff is; that lead plaintiff goes forward with the complaint, the defendant moves to dismiss.

In these cases it's a little bit different.  The 220 process under Delaware law, and as developed by the judges there who have had decades and decades and decades of experience with derivative cases, the process there is that anyone who is interested goes into the 220 process in order to come forward with the best possible complaint, and at that point anyone who wants to file a plenary action files a plenary action.

So we haven't done that.  There has not been an opportunity for that yet.  And if you're thinking that you're going to deny the stay and there has to be -- then there has to be an opportunity for other groups or possible plaintiffs to challenge this complaint.  Otherwise, Oklahoma Fire has leapfrogged the entire process, not only getting the best records and best underlying documents of not filing necessarily the best or the most robust complaint, but they've also leapfrogged over any kind of leadership issue.  Because the Court would have to decide leadership, so then --

THE COURT:  All right.  I'm going to jump for a minute.  Mr. Hatch, you're representing Boeing?

MR. HATCH:  Yes, Your Honor.

THE COURT:  Are you the main spokesperson?  Who is going to do most of the talking?

MR. HATCH:  Mr. Pepperman, Your Honor.

MR. PEPPERMAN:  I am, Your Honor.

THE COURT:  Is there going to be an MDL request in

this?  I mean, how many cases are there floating out there, either derivative cases or share -- or securities cases?

MR. PEPPERMAN:  So in terms of cases in federal court, Your Honor, arising out of the Alaska Airlines accident back in January, there's just the two before Your Honor.

There have been a large number of Section 220 demands made by stockholders in pursuit of potential derivative claims, many more than the parties that are before Your Honor.  And there's the one Section 220 action pending in the Delaware Court of Chancery.  But in terms of what is in federal court, in terms of actions that were filed after the Alaska Airlines accident, there are just the two before Your Honor.

THE COURT:  All right.  So it's just the one shareholder case, the securities case, and the one derivative case?

MR. PEPPERMAN:  Yes, Your Honor.  They're both brought by stockholders.  There's the Section 10(b) case, which is a class action seeking to recover for the decline in the price of the stock, and then there's the derivative action which was as -- was pointed out was actually a lawsuit brought by stockholders on behalf of the company to recover for a breach of fiduciary duty.

The only other thing, Your Honor, that I had a response to your questions earlier, obviously on the issue before Your Honor, the motion to intervene, the stay motion, Boeing,

24

the defendants, do not take any position. We are prepared and planning to make our motion to dismiss the existing derivative complaint. We are planning on filing that on Monday.

And the only other thing that I will say, in terms of documents that are being produced pursuant to the Section 220 process, we are also providing copies of those documents to Oklahoma even though it has filed its complaint. So when documents get produced to other stockholders as part of the Section 220 process, we're providing the same documents to Oklahoma.

THE COURT: All right. Thank you.

MS. PODOLSKY: So I would -- thank you very much.

I would take that and say, there are other 220 demands out there, there are other -- and Boeing wants to file on Monday, just as I said. So I don't -- all we're asking for is a short period of time, 30 days or 60 days. We're not asking for anything more than that. And I'm more than happy to come in and give you reports as we go along, and if you want to cut it off, you want to cut it off.

But between now and Monday, there are other complaints that people might want to file. So if you're intending to deny the stay, I think you have to give everyone who is out there, including us, an opportunity to file in this court. So we need an opportunity -- we would need an opportunity and everyone else would need an opportunity. So that would push the Boeing motion

25

to dismiss off until you've gone through the -- you have to go -- you don't have to do anything.

THE COURT:  I'm not doing anything in September but Google.  Okay?

MS. PODOLSKY:  Understood.  Understood.  So if you give us through September, if you give us past the substantial production deadline and we come back in and we report to you and then you say, okay, fine, everybody -- either I'm satisfied or I'm not, or everybody has to --

THE COURT:  Okay.  So as I understand it, Ms. Podolsky, if I grant your motion and I stay the Oklahoma case for, say, 30 days, my understanding is, during that timeframe, Oklahoma is getting access to any of the documents that are being produced by Boeing in the Delaware proceeding, which would enable Oklahoma possibly to file an amended complaint with the benefit of that additional information.  Am I correct that you would be able to do that?

MR. HUFFMAN:  Yes, Your Honor.  We believe our claims are strong as pled, we believe the key documents are the Board minutes.  We have 49 sets of them.  If we ever needed to replead, though, Your Honor, we would have the benefits of the exact same documents that my colleagues have talked about.

THE COURT:  Okay.  All right.

MS. PODOLSKY:  So then that makes my case even stronger.  Right?  Give everybody a chance.

26

THE COURT:  Here's what we're going to do.  I am going to grant the motion to intervene, I'm going to stay the Oklahoma case for 30 days.  All right?  Among other things, frankly, as I said, I wouldn't be able to give any attention to whatever gets filed in September anyway.  So as a practical matter -- we move quickly here.  We'll see what happens, what happens.  All right?

So that's the answer.  I want a report 30 days from today as to how things are going in terms of the production.  And I think that's all I really need.  I don't see any huge disadvantage to Oklahoma in this respect.  The only issue may be ultimately which law firm and which case perhaps becomes the lead case.  That really doesn't address the merits, and so I'm not concerned about that.  All right?

MS. PODOLSKY:  A written report in 30 days, and do you want to see us again or will you make your decision at that time?

THE COURT:  I think just let me get a written report first, and I'll see whether it's necessary to have you-all come back in for any kind of a hearing.  All right?

MS. PODOLSKY:  Yes, ma'am.  We will take responsibility to file it, and if anyone else wants to chime in, they can do that as well.

THE COURT:  All right.  Do you folks want to say anything?

MR. HUFFMAN:  Question, Your Honor.  Will the stay that

27

you just mentioned affect the motion to dismiss that's due on Monday?

THE COURT: Yeah, there's no sense in filing it. I've saved you some time and money. Frankly, you don't want to file it. It lets the other side know exactly where you see their weaknesses are, because the additional information may or may not lead them to want to do an amendment. All right?

MR. PEPPERMAN: Correct, Your Honor. We'll stand down for 30 days.

THE COURT: That's fine. All right.

So this case, then, this issue is resolved.

MS. PODOLSKY: Thank you, ma'am.

THE COURT: So we'll allow a switch of positions.

MR. WILLIAMS: Your Honor, if I may. Charles Williams. I am the Virginia counsel for Oklahoma. I did not appear earlier because of the confusion with all the people. I just wanted to note that.

THE COURT: You're on the record. Thank you, sir.

MR. WILLIAMS: Thank you.

THE COURT: All right. So now this is the securities case and this is a motion to dismiss. I've had a chance to look at the complaint, the very long complaint, and I've had a chance to consider the arguments of counsel. And I recognize that there are heightened pleading requirements under both Rule 9(b) and the PSLRA for these types of cases, but this is a case where

there's an extensive amount of detail that I think adequately hits all the necessary requirements to let the case go forward.

And so I'm going to deny the motion to dismiss. It's that simple. The complaint speaks for itself. It records and relates tons of information that supports the claim at this point that there has been material misstatements made to the investing public, that there is definitely a sufficient nexus with the damages, and that it's a strong inference of scienter here.

I think it's a real problem for Boeing. It's a shame, because Boeing was a corporation that had such an outstanding reputation. I note that Boeing has resolved some of these disputes in the past, and I can see why there would be a huge advantage to try to sit down and work this case out as early as possible. But if that doesn't happen, we will proceed with litigation.

I was concerned about how many other cases, especially securities cases, were around, but the SEC also has an action, does it not? Or is at least conducting an investigation at this point?

MR. JOHNSON: Chad Johnson on behalf of the lead plaintiffs.

The SEC has announced that they are conducting an investigation. We'll see if they bring a case. Frankly, Your Honor, whether they do or whether they don't doesn't need

29

to impact this private litigation.

THE COURT:  Oh, I understand.

MR. JOHNSON:  But yes, that's the answer to your question.

THE COURT:  But it does sometimes make it more complicated for settlement purposes.  Because I've had cases where the SEC wants its portion, and that makes it more difficult in some respects to get the other side satisfied, so that becomes an issue down the road.

Do you have any sense of the timing as to when the SEC may make a decision?

MR. JOHNSON:  No.  They have made no comment about that and we have no further insight, other than what's generally available.

THE COURT:  All right.  Yes, sir?

MR. PEPPERMAN:  Your Honor, just in terms of the landscape, because the Court raised the question of other securities actions.  There is an overlapping securities class action pending in the Northern District of Illinois.  This was a securities class action that was brought in the aftermaths of the two 737 MAX accidents in 2017 and 2018.

The classes in the two cases overlap by about six weeks.  The class period in the other class action ends on December 12th, 2019, and the class period in this action begins on September 30th, 2019.  So you have what's effectively the six

weeks between them with overlap.

The action pending in Illinois, there was motion practice on a motion to dismiss.  You know, we cited multiple places in our briefs Judge Tharp's ruling on the initial motion to dismiss which substantially reduced the size of the action but allowed part of it to go forward.

About a year into fact discovery, the plaintiffs in that action made a motion for leave to amend their complaint and we made a motion to dismiss their amended complaint, and that motion has now been pending by about nine months.  But because a second motion to dismiss was filed, the PSLRA stay of discovery kicked in.  That's been delayed a bit because the judge who had that action in the Northern District of Illinois, Judge Maldonado, went up to the Seventh Circuit during the pendency of the motion and the case has been reassigned.

And then there also are pending in Illinois, one in federal court that we cited the decision to Your Honor and several in state courts, individual stockholder actions; again, actions that were filed in the aftermath of the 2017 and 2018 737 MAX accidents, not the Alaska Airlines accidents.

The securities action, as my colleague said, the SEC hasn't announced an investigation.  There can be no prediction on timing on that.

You know, Your Honor came on the bench, it appears, with her mind made up, and I understand that and I respect that.

I mean, if I could have just two minutes on the interest of scienter, I would like to raise a couple of points with Your Honor.  But I also don't want to overstay my welcome at the lectern.

THE COURT:  That's all right.

MR. HATCH:  So, Your Honor, look, I acknowledge the complaint is very long and very detailed.  You know, from our perspective, part of the flaws of the complaint is its length.  You know, we said in our papers that the plaintiffs challenge 75 different statements, and we did that by counting up the subheadings in their brief.  I think the actual number of statements that they challenge is probably over 200.  We excerpted them in Appendix A to our brief, and you can see, they go on for 70 pages.  You can only imagine what the verdict form would look like in a trial before Your Honor if the jury were asked to rule on all 70 of those case.

But, Your Honor, the thing from our perspective that cuts through all of this and that may have gotten lost based on the size of the complaint and the parties' briefing is the issue of scienter.  And as I understand it, Your Honor, the plaintiffs' principal arguments from scienter are based on the positions of the individual defendants and the reporting structure that was implemented after the 2019 accident; the receipt of safety reports, with no allegations about the details of what those reports claimed; the overall importance of safety

32

to an airline manufacturer such as Boeing; and the fact of the allegations attributed to whistleblowers and former employees.

And I submit, Your Honor, under settled Fourth Circuit case law, those allegations are insufficient.  In the *Yates* case, the Fourth Circuit held that to plead scienter, you need particularized allegations establishing the defendant's, quote, "actual knowledge," closed quote, of contradictory information. And general allegations about reporting structures or general allegations about safety reports, without any allegations as to the content of those safety reports, are insufficient.

THE COURT:  But counsel, you know it's a standard jury instruction that in order to know what a person -- prove what a person knew or intended, we can't look into their minds. Circumstantial evidence is certainly normal, and that's what's done to establish scienter.  And scienter can be proven by, as I said, circumstantial evidence, and the quantum of circumstantial evidence is important in many respects.

I think that's probably why the complaint is written as it is, with so much in it.  I mean, you know, I certainly agree with you, it's a long complaint, and I don't like terribly long complaints.  But I suspect and I'm satisfied that it was done that way because, again, safety is so critical to Boeing.  There can't be many industries - maybe pharmaceuticals would be the other ones - where the safety of the product is the paramount, the single most important thing.  It is critical that airplanes

and aircraft be safe, and that every reasonable measure be taken to make sure that they are safe. And especially after Boeing is on notice from those two awful incidents where the planes crashed, that they thereafter are not taking the most scrupulous efforts to ensure that that never happens again, and then it happens again.

I mean, I'm satisfied there's enough there at this point -- again, it still is the pleading stage. And as rigid as 9(b) and PSLRA are, they don't require proof of the case in the filing of the complaint. It just has to be enough evidence to satisfy the judicial officer reviewing it that there's a genuine case; this is not just a fishing expedition, there's real evidence that suggests liability, enough to let the case go forward and, you know, get into the morass of discovery and the expense of discovery.

Again, Boeing has settled this type of litigation before. It might be very wise to try to sit down -- Judge Vaala is our magistrate judge, or with a private mediator or a special master, if you wanted somebody like that appointed by the Court, to try to get this resolved.

But I am satisfied that dismissing this complaint would not be appropriate, so I am denying your motion.

MR. PEPPERMAN: Okay. Thank you, Your Honor.

THE COURT: Yes, sir, did you have anything? You won. You better be careful.

34

MR. JOHNSON:  Absolutely, Your Honor.  Not to revisit that at all, but I wonder if it would be helpful to address efficiency.  Because there certainly was a lot of talk of that with regard to the derivative cases, which I know Your Honor stayed, and if you're --

THE COURT:  I don't need to hear that.  I'm allowing the complaint to go forward.  Now, that means we want to get things started.  Can the defense file their answer within 14 days?  I can give you a bit more time, because, again, I'm not going to be doing anything with it in the month of September.

MR. PEPPERMAN:  Your Honor, normally I would reflexively say yes to that.  The complaint, however, is over 300 pages.  It's a lengthy complaint.  If the defendants could have 28 days for their answer, it would be greatly appreciated.

THE COURT:  That's fine.  I assume there's no objection to that?

MR. JOHNSON:  No.

THE COURT:  All right.  So answer due within 28 days. I will even be generous and hold off issuing the scheduling order until we get your answer.  Normally I would issue it today.  So you just picked up an extra few weeks for discovery.

All right.  I believe that takes care of everything

that was on the docket for this case.  We'll recess court until 2:00 o'clock.

(Off the record at 11:29 a.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, Rebecca Stonestreet, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.**

**___//Rebecca Stonestreet//___          __9/9/24_____**

**SIGNATURE OF COURT REPORTER                    DATE**

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

**/**

**//Rebecca** [1] - 35:20

**1**

**1** [3] - 3:15, 9:17, 13:6
**10(b** [4] - 18:6, 18:12, 21:9, 23:17
**10004** [1] - 3:6
**10005** [1] - 2:23
**10022** [1] - 2:4
**101** [1] - 3:2
**10170** [1] - 2:17
**104** [1] - 2:7
**10:40** [1] - 1:11
**1100** [1] - 2:19
**11:29** [1] - 35:3
**125** [1] - 3:5
**12th** [1] - 29:24
**13** [1] - 11:24
**1301** [1] - 2:3
**14** [1] - 34:9
**140** [1] - 2:23
**151** [1] - 5:4
**16** [1] - 11:24
**1700** [1] - 3:9
**1800** [1] - 1:24
**1832** [1] - 2:16
**19810** [1] - 2:8
**1:24-CV-00151** [1] - 2:14
**1:24-cv-1200** [2] - 1:4, 4:2
**1:24-CV-1200** [1] - 1:16
**1:24-cv-151** [2] - 1:9, 4:4

**2**

**200** [1] - 31:12
**20005-3965** [1] - 2:20
**20006** [1] - 3:10
**2017** [2] - 29:21, 30:19
**2018** [2] - 29:21, 30:19
**2019** [3] - 29:24, 29:25, 31:23
**202-956-6982** [1] - 3:10
**2022** [1] - 13:20
**2023** [1] - 13:20
**2024** [5] - 1:10, 13:20, 16:15, 16:16, 16:23
**209** [1] - 2:10
**212-432-5100** [1] - 2:17
**212-558-4000** [1] - 3:7
**212-789-1340** [1] - 2:4
**212-907-0700** [1] - 2:24

**220** [16] - 6:7, 6:9, 7:23, 9:23, 10:22, 11:11, 13:9, 13:10, 20:19, 22:1, 22:5, 23:6, 23:9, 24:5, 24:9, 24:13
**22314** [3] - 1:25, 2:11, 3:13
**23230** [1] - 1:21
**23510** [1] - 3:3
**240** [1] - 3:14
**26th** [5] - 11:20, 12:11, 12:14, 12:19, 12:22
**2740** [1] - 3:6
**28** [2] - 34:15, 34:20
**2:00** [1] - 35:2

**3**

**30** [6] - 24:16, 25:12, 26:3, 26:7, 26:14, 27:9
**300** [2] - 2:3, 34:14
**302-499-2122** [1] - 2:8
**30th** [1] - 29:25
**3300** [1] - 1:17
**3411** [1] - 2:6
**39** [1] - 11:24

**4**

**401** [1] - 3:13
**420** [1] - 2:16
**426-7767** [1] - 3:14
**4801** [1] - 1:20
**49** [1] - 25:20
**4th** [3] - 11:15, 11:16, 11:19

**5**

**500** [1] - 2:20
**501** [1] - 2:11
**571-366-1702** [1] - 1:25

**6**

**6** [1] - 1:10
**60** [1] - 24:16
**600** [2] - 1:16, 1:24
**619-233-4565** [1] - 1:18

**7**

**70** [2] - 31:14, 31:16
**700** [1] - 3:9
**703-549-5354** [1] - 2:12
**737** [2] - 29:21, 30:20
**75** [1] - 31:9

**757-640-3947** [1] - 3:3
**77** [2] - 10:12, 10:13

**8**

**804-447-0307** [1] - 1:21

**9**

**9(b** [3] - 18:13, 27:24, 33:9
**9/9/24** [1] - 35:20
**90** [1] - 12:5
**9000** [1] - 3:2
**92101** [1] - 1:17
**9th** [2] - 3:12, 19:1

**A**

**a.m** [2] - 1:11, 35:3
**ability** [1] - 17:25
**able** [4] - 6:7, 17:4, 25:17, 26:4
**above-entitled** [1] - 35:16
**absolutely** [2] - 11:25, 34:1
**access** [1] - 25:13
**accident** [3] - 23:4, 23:11, 31:23
**accidents** [3] - 29:21, 30:20
**acknowledge** [1] - 31:6
**Action** [1] - 4:2
**action** [31] - 7:8, 7:24, 8:21, 9:1, 9:23, 10:20, 10:25, 11:2, 13:2, 19:11, 20:16, 21:8, 21:11, 22:7, 23:9, 23:18, 23:19, 28:18, 29:19, 29:20, 29:23, 29:24, 30:2, 30:5, 30:8, 30:13, 30:21
**actions** [5] - 9:22, 23:11, 29:18, 30:18, 30:19
**actual** [4] - 13:23, 14:20, 31:11, 32:7
**additional** [4] - 8:3, 10:17, 25:16, 27:6
**address** [4] - 5:8, 17:22, 26:12, 34:2
**adequately** [1] - 28:1
**advantage** [1] - 28:14
**adverse** [2] - 8:21, 8:23
**Aerospace** [3] - 13:17, 13:19, 13:24
**affect** [1] - 27:1

**aftermath** [1] - 30:19
**aftermaths** [1] - 29:20
**agree** [1] - 32:19
**agreed** [4] - 12:8, 12:10, 12:13, 15:7
**agreement** [3] - 15:8, 20:3, 20:8
**aircraft** [1] - 33:1
**airline** [1] - 32:1
**Airlines** [3] - 23:4, 23:11, 30:20
**airplanes** [1] - 32:25
**al** [2] - 1:6, 4:4
**Alaska** [3] - 23:4, 23:11, 30:20
**Alexandria** [4] - 1:2, 1:25, 2:11, 3:13
**allegations** [12] - 10:13, 10:15, 13:11, 13:12, 14:15, 31:24, 32:2, 32:4, 32:6, 32:8, 32:9
**allow** [2] - 10:21, 27:13
**allowed** [1] - 30:6
**allowing** [1] - 34:6
**amend** [1] - 30:8
**amended** [2] - 25:15, 30:9
**amendment** [1] - 27:7
**amount** [1] - 28:1
**amounts** [1] - 17:15
**analysis** [6] - 8:18, 18:5, 18:7, 18:18, 18:21, 19:8
**AND** [3] - 1:4, 1:24, 2:3
**animal** [3] - 18:7, 18:21, 19:8
**animals** [1] - 21:2
**announced** [2] - 28:23, 30:22
**answer** [10] - 11:13, 12:1, 19:25, 20:15, 26:7, 29:3, 34:8, 34:15, 34:20, 34:22
**antitrust** [2] - 11:2, 21:21
**anyway** [1] - 26:5
**appear** [1] - 27:15
**appearance** [1] - 4:11
**APPEARANCES** [1] - 1:14
**Appendix** [1] - 31:13
**applies** [1] - 12:10
**appointed** [1] - 33:19
**appreciated** [1] - 34:16
**appropriate** [1] - 33:22

**approved** [2] - 16:21, 16:24
**arguments** [3] - 9:14, 27:23, 31:21
**arising** [1] - 23:4
**assigning** [1] - 12:3
**assisting** [1] - 4:15
**assume** [1] - 34:17
**attached** [2] - 9:17, 11:21
**attention** [2] - 17:3, 26:4
**attributed** [1] - 32:2
**AULD** [1] - 2:2
**AULT** [1] - 2:6
**available** [2] - 11:5, 29:14
**Avenue** [5] - 1:20, 2:3, 2:16, 2:19, 3:9
**aware** [1] - 11:17
**awful** [1] - 33:3

**B**

**based** [5] - 8:22, 10:12, 17:5, 31:18, 31:21
**bases** [1] - 15:12
**Baynard** [1] - 2:7
**become** [2] - 6:21, 6:22
**becomes** [2] - 26:11, 29:9
**BEFORE** [1] - 1:13
**begins** [1] - 29:24
**BEHALF** [1] - 2:11
**behalf** [7] - 5:1, 5:18, 8:13, 15:13, 19:21, 23:21, 28:21
**below** [1] - 13:22
**Ben** [1] - 5:17
**bench** [1] - 30:24
**benefit** [3] - 7:11, 16:13, 25:15
**benefits** [1] - 25:21
**BENJAMIN** [1] - 3:1
**best** [11] - 8:8, 11:3, 11:4, 11:5, 11:7, 22:6, 22:13, 22:14, 22:15
**better** [2] - 10:23, 33:25
**between** [2] - 24:20, 30:1
**bit** [4] - 13:20, 22:1, 30:12, 34:9
**BLEICHMAN** [1] - 2:2
**Bleichmar** [2] - 4:14
**BLEICHMAR** [2] - 2:2, 2:6

**Board** [15] - 8:11, 8:12, 8:14, 15:13, 15:14, 16:3, 16:10, 16:15, 16:16, 16:17, 16:20, 16:22, 16:24, 25:19
**board** [6] - 14:1, 14:3, 14:4, 14:5, 15:4
**body** [2] - 19:9, 19:12
**Boeing** [44] - 4:4, 4:23, 6:23, 7:10, 8:7, 8:8, 8:9, 8:20, 9:16, 9:17, 10:19, 11:4, 11:15, 12:7, 12:17, 13:6, 14:1, 14:22, 14:23, 14:24, 15:6, 15:23, 15:25, 16:7, 16:16, 18:24, 19:2, 19:3, 20:3, 20:8, 20:25, 22:19, 23:25, 24:14, 24:25, 25:14, 28:10, 28:11, 28:12, 32:1, 32:22, 33:2, 33:16
**BOEING** [1] - 1:9
**books** [3] - 10:21, 11:19, 11:21
**Bouchard** [2] - 9:15, 9:24
**box** [1] - 5:14
**breach** [1] - 23:21
**Brent** [1] - 5:7
**BRENT** [1] - 2:14
**brief** [3] - 14:12, 31:11, 31:13
**briefing** [1] - 31:19
**briefs** [1] - 30:4
**bring** [2] - 8:25, 28:24
**bringing** [2] - 7:2, 17:2
**BRINKEMA** [1] - 1:13
**Broad** [1] - 3:5
**Broadway** [2] - 1:16, 2:23
**brought** [7] - 9:21, 9:23, 11:7, 23:16, 23:20, 29:20
**Building** [1] - 2:7

## C

**CA** [1] - 1:17
**Calhoun** [1] - 4:4
**CALHOUN** [1] - 1:6
**California** [1] - 9:9
**cannot** [3] - 19:23, 19:25, 20:8
**care** [1] - 34:25
**careful** [1] - 33:25
**CARL** [1] - 3:4
**Carol** [1] - 5:12

**CAROL** [1] - 2:22
**Case** [2] - 1:3, 1:9
**case** [58] - 4:17, 4:24, 5:4, 5:14, 6:21, 7:2, 7:5, 7:6, 7:8, 7:9, 7:13, 7:14, 7:16, 7:20, 8:4, 9:8, 9:17, 10:2, 10:19, 11:14, 15:16, 17:8, 17:14, 17:16, 18:12, 18:14, 18:16, 19:5, 19:7, 19:10, 20:5, 21:9, 23:14, 23:15, 23:17, 25:11, 25:24, 26:3, 26:11, 26:12, 27:11, 27:21, 27:25, 28:2, 28:14, 28:24, 30:15, 31:16, 32:4, 32:5, 33:9, 33:12, 33:13, 35:1
**CASE** [2] - 1:16, 2:14
**cases** [21] - 4:9, 9:8, 9:20, 9:22, 21:15, 21:21, 21:22, 22:1, 22:4, 23:1, 23:2, 23:3, 27:25, 28:17, 28:18, 29:6, 29:22, 34:4
**categories** [1] - 13:5
**caution** [1] - 18:11
**CECILLIA** [1] - 2:22
**certainly** [4] - 17:21, 32:14, 32:19, 34:3
**CERTIFICATE** [1] - 35:12
**certify** [1] - 35:14
**CHAD** [1] - 2:14
**Chad** [2] - 5:6, 28:21
**challenge** [4] - 8:9, 22:12, 31:9, 31:12
**chance** [4] - 12:16, 25:25, 27:21, 27:22
**chancellor** [3] - 10:20, 12:3, 13:8
**Chancellor** [3] - 9:15, 9:24, 13:8
**Chancery** [3] - 6:7, 7:24, 23:10
**channel** [1] - 14:5
**channels** [5] - 15:1, 15:8, 15:10, 16:6
**charge** [1] - 13:25
**CHARLES** [1] - 1:19
**Charles** [1] - 27:14
**chime** [1] - 26:21
**chooses** [2] - 11:1, 11:2
**CHRISTOPHER** [1] - 2:14
**Circuit** [4] - 9:11,

30:14, 32:3, 32:5
**circumstances** [1] - 9:18
**circumstantial** [3] - 32:14, 32:16
**cite** [2] - 9:8, 13:6
**cited** [2] - 30:3, 30:17
**citing** [3] - 10:2, 11:24, 13:9
**Civil** [2] - 1:3, 1:9
**civil** [1] - 4:2
**claim** [3] - 8:12, 8:15, 28:5
**claimed** [1] - 31:25
**claiming** [1] - 7:2
**claims** [3] - 10:18, 23:7, 25:18
**class** [8] - 5:5, 7:8, 23:18, 29:18, 29:20, 29:23, 29:24
**classes** [1] - 29:22
**clearly** [1] - 10:22
**CLERK** [2] - 4:2, 4:10
**client** [1] - 19:21
**clients** [1] - 7:11
**closed** [1] - 32:7
**co** [1] - 5:11
**co-liaison** [1] - 5:11
**COHEN** [1] - 2:19
**colleague** [1] - 30:21
**colleagues** [2] - 13:17, 25:22
**comment** [1] - 29:12
**Committee** [3] - 13:17, 13:19, 13:25
**committee** [9] - 13:20, 13:23, 13:24, 14:2, 14:6, 14:8, 14:25, 16:3, 16:10
**COMPANY** [1] - 1:9
**company** [4] - 7:17, 8:12, 21:8, 23:21
**Company** [1] - 4:4
**complaining** [2] - 14:23, 14:24
**complaint** [51] - 8:22, 10:10, 10:11, 10:15, 11:3, 11:4, 11:7, 13:5, 13:11, 13:18, 14:10, 14:14, 14:15, 15:5, 16:13, 18:2, 18:6, 18:8, 18:9, 18:11, 18:23, 18:24, 19:1, 19:6, 19:11, 21:13, 21:22, 21:24, 22:6, 22:12, 22:15, 24:3, 24:7, 25:15, 27:22, 28:4, 30:8, 30:9, 31:7, 31:8, 31:19, 32:18, 32:20,

33:10, 33:21, 34:7, 34:13, 34:14
**complaints** [11] - 14:9, 14:20, 15:2, 15:3, 15:7, 15:9, 16:6, 17:11, 24:20, 32:21
**complete** [4] - 10:21, 10:23, 12:5, 18:1
**completely** [2] - 10:9, 17:5
**complicated** [1] - 29:6
**compliment** [1] - 5:24
**COMPUTERIZED** [1] - 3:17
**concern** [4] - 8:2, 17:19, 19:14, 21:12
**concerned** [2] - 26:13, 28:17
**concerns** [4] - 15:3, 16:6, 16:11, 21:5
**conduct** [3] - 13:13, 18:4, 21:2
**conducting** [2] - 28:19, 28:23
**confusion** [1] - 27:16
**Congress** [1] - 14:17
**consider** [1] - 27:23
**consolidate** [1] - 21:16
**consumer** [2] - 11:2, 21:21
**content** [1] - 32:10
**continue** [3] - 6:7, 6:9, 12:13
**contradictory** [1] - 32:7
**copies** [1] - 24:6
**corporation** [1] - 28:11
**correct** [8] - 6:6, 6:10, 8:6, 10:7, 20:19, 25:16, 27:8, 35:15
**counsel** [9] - 4:10, 5:4, 5:5, 5:11, 5:12, 20:13, 27:15, 27:23, 32:11
**counting** [1] - 31:10
**couple** [3] - 5:13, 13:4, 31:2
**course** [1] - 10:7
**Court** [22] - 3:12, 5:8, 7:23, 7:24, 8:24, 9:1, 9:11, 12:20, 13:1, 15:18, 17:10, 18:2, 18:3, 18:9, 18:12, 18:22, 21:15, 21:23, 22:17, 23:9, 29:17, 33:19
**COURT** [56] - 1:1, 3:12, 4:6, 4:17, 4:21,

4:23, 5:2, 5:9, 5:13, 5:22, 5:25, 6:11, 6:14, 6:16, 6:19, 7:1, 7:14, 7:18, 8:1, 9:5, 11:10, 17:10, 19:17, 19:24, 20:1, 20:6, 20:12, 20:18, 20:21, 22:18, 22:21, 22:25, 23:13, 24:11, 25:3, 25:10, 25:23, 26:1, 26:17, 26:23, 27:3, 27:10, 27:13, 27:18, 27:20, 29:2, 29:5, 29:15, 31:5, 32:11, 33:24, 34:6, 34:17, 34:20, 35:12, 35:21
**court** [11] - 9:12, 9:21, 10:25, 11:1, 11:8, 17:6, 23:3, 23:10, 24:23, 30:17, 35:1
**Court's** [6] - 5:7, 17:18, 17:20, 19:14, 19:15, 21:11
**Courthouse** [1] - 3:13
**COURTROOM** [2] - 4:2, 4:10
**courts** [2] - 11:23, 30:18
**Craig** [1] - 5:4
**CRAIG** [2] - 2:9, 2:10
**CRANDALL** [1] - 2:9
**crash** [1] - 16:23
**crashed** [1] - 33:4
**cream** [3] - 15:17, 15:18, 15:19
**critical** [10] - 13:1, 13:4, 15:11, 15:15, 15:18, 15:23, 16:4, 17:4, 32:22, 32:25
**Cromwell** [1] - 5:20
**CROMWELL** [2] - 3:5, 3:8
**CRR** [1] - 3:12
**current** [2] - 8:7, 8:22
**cut** [3] - 20:22, 24:18, 24:19
**cuts** [2] - 20:19, 31:18

## D

**damage** [1] - 17:12
**damaged** [1] - 21:8
**damages** [5] - 7:15, 7:16, 7:20, 21:6, 28:8
**DATE** [1] - 35:21
**DAVID** [1] - 1:6
**days** [14] - 11:24, 12:5, 24:16, 25:12, 26:3, 26:7, 26:14, 27:9, 34:9, 34:15,

3

34:20
**DC** [2] - 2:20, 3:10
**DE** [1] - 2:8
**deadline** [3] - 11:14, 12:10, 25:7
**dealing** [1] - 9:21
**decades** [3] - 22:3
**December** [1] - 29:24
**decide** [1] - 22:17
**decides** [1] - 21:23
**decision** [12] - 8:5, 8:23, 10:16, 10:17, 11:25, 13:7, 13:9, 17:6, 18:2, 26:15, 29:11, 30:17
**decline** [1] - 23:18
**defeats** [1] - 6:5
**defendant** [2] - 11:4, 21:25
**defendant's** [1] - 32:6
**Defendants** [1] - 1:7
**defendants** [7] - 5:18, 5:21, 7:3, 7:4, 24:1, 31:22, 34:14
**DEFENDANTS** [1] - 3:1
**defense** [1] - 34:8
**deferent** [1] - 19:9
**definitely** [1] - 28:7
**deflects** [1] - 6:5
**Delaware** [10] - 6:7, 7:24, 9:11, 9:16, 9:21, 12:4, 19:19, 22:2, 23:9, 25:14
**delayed** [1] - 30:12
**delta** [3] - 12:12, 12:14, 12:23
**demand** [7] - 8:9, 8:11, 8:17, 9:2, 12:8, 18:14, 18:17
**demands** [3] - 20:24, 23:6, 24:13
**deny** [4] - 17:25, 22:10, 24:21, 28:3
**denying** [1] - 33:22
**derivative** [24] - 7:8, 7:9, 7:13, 7:14, 7:16, 7:25, 8:15, 9:22, 10:20, 13:2, 18:7, 18:25, 19:4, 19:7, 19:10, 21:8, 21:20, 22:4, 23:2, 23:7, 23:14, 23:19, 24:2, 34:4
**DERRICK** [1] - 2:5
**Derrick** [1] - 4:14
**detail** [1] - 28:1
**detailed** [1] - 31:7
**details** [1] - 31:24
**developed** [2] - 10:18,

22:2
**Diagnal** [1] - 1:24
**Diego** [1] - 1:17
**differences** [1] - 21:18
**different** [17] - 7:19, 18:7, 18:14, 18:17, 18:21, 19:8, 19:9, 19:12, 20:4, 21:1, 21:6, 21:7, 22:1, 31:10
**difficult** [1] - 29:8
**directly** [1] - 12:21
**disadvantage** [1] - 26:10
**discovery** [8] - 17:13, 17:25, 20:4, 30:7, 30:11, 33:14, 33:15, 34:24
**discussing** [1] - 10:3
**dismiss** [19] - 8:3, 8:7, 8:20, 8:24, 11:8, 13:7, 17:6, 18:15, 18:25, 21:25, 24:2, 25:1, 27:1, 27:21, 28:3, 30:3, 30:5, 30:9, 30:11
**dismissing** [1] - 33:21
**disposed** [1] - 19:1
**disputes** [1] - 28:13
**disrespect** [1] - 10:10
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [3] - 3:12, 29:19, 30:13
**Division** [1] - 1:2
**docket** [1] - 35:1
**documents** [19] - 10:13, 12:9, 12:12, 12:23, 12:24, 12:25, 13:9, 13:10, 13:22, 19:18, 19:22, 22:14, 24:5, 24:6, 24:8, 24:9, 25:13, 25:19, 25:22
**done** [4] - 10:6, 22:8, 32:15, 32:21
**DOWD** [1] - 2:15
**down** [9] - 9:10, 10:9, 12:23, 17:9, 17:20, 27:8, 28:14, 29:9, 33:17
**drive** [1] - 20:11
**due** [3] - 8:7, 27:1, 34:20
**during** [2] - 25:12, 30:14
**duty** [2] - 15:14, 23:22

# E

**early** [1] - 28:14
**EASTERN** [1] - 1:1
**effect** [8] - 8:5, 8:25, 9:4, 9:13, 10:9, 10:23, 11:9, 17:8
**effectively** [1] - 29:25
**efficiency** [3] - 17:19, 19:15, 34:3
**efforts** [1] - 33:5
**egregious** [1] - 13:13
**Eight** [1] - 9:11
**either** [3] - 20:13, 23:2, 25:8
**employee** [3] - 15:3, 16:6, 16:11
**employees** [1] - 32:2
**EMPLOYEES** [2] - 1:23, 2:2
**EMPLOYEES'** [1] - 2:11
**enable** [1] - 25:14
**end** [1] - 11:21
**ends** [1] - 29:23
**ensure** [1] - 33:5
**entire** [2] - 8:17, 22:13
**entirely** [10] - 15:24, 18:7, 18:17, 18:21, 19:8, 19:9, 19:12, 21:6
**entitled** [1] - 35:16
**especially** [2] - 28:17, 33:2
**essentially** [2] - 9:1, 20:17
**establish** [2] - 15:13, 32:15
**establishing** [1] - 32:6
**et** [2] - 1:6, 4:4
**everywhere** [1] - 9:13
**evidence** [9] - 8:1, 8:2, 8:3, 20:18, 32:14, 32:16, 32:17, 33:10, 33:13
**exact** [1] - 25:22
**exactly** [1] - 27:5
**example** [2] - 10:19, 18:22
**excerpted** [1] - 31:13
**excuse** [1] - 9:17
**exhibits** [1] - 11:22
**existing** [1] - 24:2
**expect** [3] - 8:20, 11:15, 15:6
**expects** [1] - 12:4
**expedited** [1] - 12:4
**expedition** [1] - 33:12
**expense** [1] - 33:15
**experience** [1] - 22:3

**expert** [1] - 14:17
**explained** [1] - 7:23
**extensive** [1] - 28:1
**extent** [1] - 18:3
**extra** [1] - 34:23
**extraordinarily** [1] - 14:2

# F

**fact** [3] - 21:4, 30:7, 32:1
**facts** [5] - 11:5, 11:7, 18:13, 18:20, 21:2
**factual** [1] - 18:1
**factually** [1] - 17:5
**fairly** [1] - 18:22
**false** [2] - 18:12, 18:16
**far** [1] - 17:20
**FARRELL** [1] - 2:5
**Farrell** [1] - 4:14
**fascinating** [1] - 5:23
**February** [1] - 16:19
**federal** [3] - 23:3, 23:10, 30:17
**few** [3] - 14:11, 19:13, 34:23
**fiduciary** [1] - 23:22
**file** [13] - 8:8, 8:9, 10:25, 17:4, 21:22, 22:7, 24:14, 24:21, 24:23, 25:15, 26:21, 27:4, 34:8
**filed** [9] - 8:4, 8:22, 10:10, 13:18, 23:11, 24:7, 26:5, 30:11, 30:19
**files** [1] - 22:7
**filing** [5] - 20:16, 22:14, 24:3, 27:3, 33:10
**finally** [1] - 6:1
**fine** [5] - 5:9, 5:14, 25:8, 27:10, 34:17
**Fire** [5] - 8:23, 10:11, 13:18, 20:16, 22:12
**Firefighters** [1] - 4:3
**FIREFIGHTERS** [1] - 1:3
**firm** [4] - 4:15, 5:6, 5:20, 26:11
**firms** [1] - 10:25
**first** [12] - 4:11, 4:16, 4:18, 4:21, 5:15, 6:1, 7:5, 9:16, 10:19, 11:14, 26:18
**fishing** [1] - 33:12
**fit** [1] - 4:18
**five** [2] - 14:11, 14:12
**flags** [1] - 16:5

**flaws** [1] - 31:8
**floating** [1] - 23:1
**Floor** [1] - 3:12
**folks** [1] - 26:23
**Fonti** [1] - 4:14
**FONTI** [2] - 2:2, 2:6
**food** [1] - 15:20
**FOR** [7] - 1:1, 1:15, 1:23, 2:2, 2:9, 2:14, 3:1
**foregoing** [1] - 35:14
**form** [1] - 31:14
**formal** [6] - 14:5, 15:1, 15:8, 15:25, 16:21, 16:24
**formalized** [1] - 16:17
**former** [1] - 32:2
**forth** [2] - 9:9, 9:15
**forward** [9] - 11:12, 20:18, 21:11, 21:24, 22:5, 28:2, 30:6, 33:14, 34:7
**Fourth** [2] - 32:3, 32:5
**frankly** [3] - 26:3, 27:4, 28:24
**FTC** [1] - 19:19
**full** [2] - 10:1, 10:23
**fund** [1] - 6:23
**funneling** [1] - 16:9
**funnels** [1] - 16:8
**futile** [4] - 8:11, 8:16, 8:17, 9:2
**futility** [9] - 8:9, 9:12, 10:16, 10:17, 13:8, 13:9, 13:12, 18:15, 18:17

# G

**GELLER** [1] - 2:15
**Geller** [1] - 5:6
**general** [2] - 32:8
**GENERAL** [1] - 2:10
**generally** [1] - 29:13
**generous** [1] - 34:21
**genuine** [1] - 33:11
**Google** [1] - 25:4
**governs** [2] - 19:10, 20:8
**grant** [3] - 6:19, 25:11, 26:2
**granted** [1] - 8:4
**grants** [1] - 8:24
**greatly** [1] - 34:15
**ground** [1] - 8:21
**grounds** [2] - 13:7, 19:4
**group** [2] - 11:3, 21:13
**groups** [4] - 20:23, 20:24, 21:23, 22:11

4

**guess** [1] - 8:8

**H**

**happy** [1] - 24:17
**Hatch** [2] - 5:17, 22:19
**HATCH** [5] - 3:1, 5:17, 22:20, 22:23, 31:6
**hear** [5] - 4:17, 4:21, 5:15, 18:25, 34:6
**HEARING** [1] - 1:12
**hearing** [6] - 12:11, 12:15, 12:16, 14:25, 17:14, 26:19
**heightened** [1] - 27:24
**held** [2] - 15:18, 32:5
**helpful** [1] - 34:2
**hits** [1] - 28:2
**hold** [1] - 34:21
**home** [1] - 20:11
**honestly** [1] - 16:19
**Honor** [36] - 4:22, 4:25, 5:3, 5:10, 5:17, 5:24, 14:15, 22:20, 22:23, 22:24, 23:4, 23:5, 23:8, 23:12, 23:16, 23:23, 23:25, 25:18, 25:21, 26:25, 27:8, 27:14, 28:25, 29:16, 30:17, 30:24, 31:3, 31:6, 31:15, 31:17, 31:20, 32:3, 33:23, 34:1, 34:4, 34:12
**HONORABLE** [1] - 1:13
**hope** [1] - 5:24
**hopefully** [1] - 15:9
**hours** [1] - 19:13
**Huffman** [1] - 5:1
**HUFFMAN** [4] - 1:15, 4:25, 25:18, 26:25
**huge** [4] - 17:13, 17:15, 26:9, 28:13
**hypothetical** [2] - 9:5, 10:4
**hypothetically** [1] - 18:23

**I**

**ice** [3] - 15:16, 15:17, 15:19
**identified** [2] - 9:16, 21:3
**II** [1] - 3:4
**Illinois** [4] - 29:19, 30:2, 30:13, 30:16
**imagine** [1] - 31:14
**immediately** [1] - 17:18

**impact** [1] - 29:1
**implement** [1] - 15:14
**implemented** [4] - 15:20, 16:1, 16:2, 31:23
**implementing** [1] - 13:25
**importance** [1] - 31:25
**important** [3] - 14:2, 32:17, 32:25
**impose** [1] - 9:24
**IN** [3] - 1:9, 1:15, 2:14
**incidents** [1] - 33:3
**including** [1] - 24:23
**incomplete** [1] - 10:12
**individual** [2] - 30:18, 31:22
**industries** [1] - 32:23
**inefficiencies** [2] - 17:13, 17:22
**inference** [1] - 28:8
**informal** [2] - 15:1, 15:10
**information** [8] - 17:3, 17:4, 17:15, 19:20, 25:16, 27:6, 28:5, 32:7
**initial** [1] - 30:4
**injury** [1] - 17:12
**insight** [1] - 29:13
**instruction** [1] - 32:12
**insufficient** [2] - 32:4, 32:10
**intended** [1] - 32:13
**intending** [1] - 24:21
**interest** [1] - 31:1
**INTERESTED** [1] - 2:9
**interested** [1] - 22:5
**interesting** [1] - 20:14
**internal** [8] - 10:12, 10:13, 10:14, 13:3, 13:22, 14:22, 16:11, 17:3
**intervene** [7] - 5:16, 5:23, 6:12, 6:17, 6:21, 23:25, 26:2
**intervenes** [1] - 6:2
**INTERVENOR** [2] - 1:23, 2:2
**intervenors** [1] - 4:13
**interviews** [2] - 14:18
**invested** [2] - 6:23, 6:24
**investigation** [3] - 28:19, 28:24, 30:22
**investing** [1] - 28:7
**involved** [1] - 17:22
**involves** [1] - 9:10
**Island** [1] - 7:6

**ISLAND** [2] - 2:10, 2:12
**issue** [11] - 8:10, 17:7, 17:18, 18:15, 22:16, 23:24, 26:10, 27:11, 29:9, 31:19, 34:22
**issuing** [1] - 34:21
**itself** [1] - 28:4

**J**

**January** [2] - 16:23, 23:5
**JAVIER** [1] - 2:2
**Javier** [1] - 4:14
**JEFFREY** [1] - 2:18
**Johnson** [3] - 5:6, 5:7, 28:21
**JOHNSON** [6] - 2:14, 28:21, 29:3, 29:12, 34:1, 34:19
**join** [1] - 6:4
**joins** [1] - 6:2
**Jonathan** [1] - 5:6
**JONATHAN** [1] - 2:15
**Jud** [1] - 5:20
**JUDGE** [1] - 1:13
**Judge** [3] - 30:4, 30:14, 33:17
**judge** [2] - 30:12, 33:18
**judges** [1] - 22:2
**judgment** [2] - 7:10, 9:12
**judicial** [1] - 33:11
**JUDSON** [1] - 3:8
**jump** [1] - 22:18
**jury** [3] - 5:14, 31:15, 32:11

**K**

**KELLER** [1] - 2:22
**key** [5] - 10:15, 10:16, 10:17, 14:14, 25:19
**kicked** [1] - 30:12
**kind** [2] - 22:16, 26:19
**knowing** [1] - 21:11
**knowledge** [1] - 32:7

**L**

**LABATON** [1] - 2:22
**landscape** [1] - 29:17
**large** [1] - 23:6
**last** [2] - 5:14, 11:22
**LAW** [2] - 1:23, 2:10
**law** [5] - 19:9, 19:12, 22:2, 26:11, 32:4
**lawsuit** [3] - 6:3, 6:5, 23:20

**lawyer** [1] - 21:14
**lawyers** [1] - 4:7
**lead** [7] - 5:5, 5:12, 21:23, 21:24, 26:12, 27:7, 28:21
**leadership** [2] - 22:16, 22:17
**leapfrogged** [2] - 22:13, 22:16
**learn** [1] - 16:10
**least** [2] - 16:18, 28:19
**leave** [1] - 30:8
**lectern** [1] - 31:4
**left** [1] - 12:12
**legal** [8] - 8:17, 10:18, 13:5, 18:5, 18:18, 18:20, 19:8
**length** [1] - 31:8
**lengthy** [1] - 34:14
**LEONIE** [1] - 1:13
**less** [1] - 12:1
**letters** [2] - 12:8
**level** [3] - 13:22, 14:2, 16:3
**levels** [1] - 15:4
**Lexington** [1] - 2:16
**liability** [4] - 8:13, 15:13, 21:5, 33:13
**liaison** [2] - 5:4, 5:11
**likelihood** [1] - 8:13
**limited** [1] - 6:13
**listeria** [1] - 15:20
**Litigation** [1] - 4:5
**LITIGATION** [1] - 1:9
**litigation** [4] - 7:4, 28:16, 29:1, 33:16
**LITTLETON** [1] - 3:8
**Littleton** [1] - 5:20
**LLP** [8] - 1:16, 2:2, 2:6, 2:15, 2:22, 3:1, 3:5, 3:8
**look** [4] - 27:21, 31:6, 31:15, 32:13
**looking** [3] - 7:15, 13:15, 18:9
**lost** [1] - 31:18
**LUCAS** [1] - 3:1

**M**

**ma'am** [4] - 6:18, 6:25, 26:20, 27:12
**Madison** [1] - 2:10
**magistrate** [1] - 33:18
**main** [1] - 22:21
**Main** [1] - 3:2
**majority** [1] - 8:14
**Maldonado** [1] - 30:14
**management** [1] - 15:4

**manufacturer** [1] - 32:1
**March** [1] - 16:18
**Marchand** [1] - 15:16
**master** [1] - 33:19
**material** [3] - 15:5, 15:6, 28:6
**materials** [3] - 13:18, 14:6, 16:15
**matter** [3] - 17:24, 26:5, 35:16
**matters** [1] - 5:18
**MAX** [2] - 29:21, 30:20
**MAXWELL** [1] - 1:15
**Maxwell** [1] - 5:1
**MCGUIRE** [1] - 3:1
**McGuireWoods** [1] - 5:18
**MDL** [1] - 22:25
**mean** [9] - 6:22, 9:14, 9:16, 18:18, 19:2, 23:1, 31:1, 32:19, 33:7
**means** [1] - 34:7
**measure** [1] - 33:1
**measuring** [1] - 10:8
**mediator** [1] - 33:18
**meeting** [1] - 16:21
**meetings** [2] - 14:7, 14:8
**meets** [1] - 16:20
**mentioned** [2] - 21:21, 27:1
**merits** [2] - 7:25, 26:12
**might** [5] - 8:5, 14:13, 20:4, 24:21, 33:17
**MILSTEIN** [1] - 2:19
**mind** [1] - 30:25
**minds** [1] - 32:13
**minute** [1] - 22:18
**minutes** [12] - 13:19, 13:23, 14:7, 16:16, 16:17, 16:18, 16:20, 16:21, 16:22, 16:24, 25:20, 31:1
**misconduct** [3] - 7:11, 13:13, 18:4
**mission** [3] - 15:15, 15:18, 15:23
**misstatements** [1] - 28:6
**MITCHELL** [1] - 2:14
**Mitchell** [1] - 5:7
**moment** [3] - 7:22, 20:9, 21:17
**Monday** [6] - 8:7, 19:5, 24:3, 24:15, 24:20, 27:2
**money** [1] - 27:4

monitoring [1] - 13:25
month [1] - 34:10
monthly [3] - 14:8, 16:17, 16:21
months [1] - 30:10
morass [1] - 33:14
morning [4] - 4:25, 5:3, 5:10, 5:17
most [4] - 22:15, 22:22, 32:25, 33:4
motion [31] - 5:15, 5:23, 8:3, 8:4, 8:6, 8:9, 8:20, 8:24, 11:8, 13:7, 17:6, 18:15, 18:25, 23:25, 24:2, 24:25, 25:11, 26:2, 27:1, 27:21, 28:3, 30:2, 30:3, 30:4, 30:8, 30:9, 30:10, 30:11, 30:15, 33:22
MOTIONS [1] - 1:12
move [2] - 19:4, 26:5
moves [1] - 21:25
moving [1] - 6:12
MR [23] - 4:25, 5:3, 5:10, 5:17, 22:20, 22:23, 22:24, 23:3, 23:16, 25:18, 26:25, 27:8, 27:14, 27:19, 28:21, 29:3, 29:12, 29:16, 31:6, 33:23, 34:1, 34:12, 34:19
MS [29] - 4:12, 4:20, 4:22, 5:24, 6:9, 6:12, 6:15, 6:18, 6:24, 7:13, 7:16, 7:19, 8:6, 9:6, 11:13, 17:17, 19:23, 19:25, 20:2, 20:7, 20:14, 20:19, 20:22, 24:12, 25:5, 25:24, 26:14, 26:20, 27:12
multiple [1] - 30:3

**N**

named [2] - 7:3, 7:6
names [1] - 14:14
necessarily [2] - 14:14, 22:14
necessary [2] - 26:18, 28:2
need [8] - 4:8, 24:23, 24:24, 24:25, 26:9, 28:25, 32:5, 34:6
needed [1] - 25:20
negotiating [1] - 12:7
negotiation [1] - 12:13
never [1] - 33:5
New [6] - 2:4, 2:17,

2:19, 2:23, 3:6, 3:9
newspaper [1] - 14:18
next [1] - 16:20
nexus [1] - 28:7
nine [1] - 30:10
NO [2] - 1:16, 2:14
nondisclosure [2] - 20:3, 20:7
Norfolk [1] - 3:3
normal [3] - 11:11, 16:22, 32:14
normally [2] - 34:12, 34:22
Northern [2] - 29:19, 30:13
note [3] - 4:10, 27:17, 28:12
NOTES [1] - 3:17
notice [1] - 33:3
November [5] - 11:20, 12:11, 12:14, 12:19, 12:22
number [3] - 11:22, 23:6, 31:11
Numbers [1] - 4:2
NW [2] - 2:19, 3:9
NY [4] - 2:4, 2:17, 2:23, 3:6

**O**

o'clock [1] - 35:2
objection [1] - 34:17
obtain [2] - 10:14, 19:18
obtained [1] - 19:20
obviously [3] - 12:20, 13:3, 23:24
occur [1] - 11:18
October [3] - 11:15, 11:16, 11:19
odds [1] - 6:15
OF [13] - 1:1, 1:12, 1:25, 1:23, 2:4, 2:10, 2:10, 2:11, 2:12, 2:10, 3:17, 35:12, 35:21
OFFICE [2] - 2:10, 2:10
officer [1] - 33:11
officers [2] - 7:3, 7:4
OFFICES [1] - 1:23
OFFICIAL [2] - 3:12, 35:12
often [1] - 9:20
OHIO [4] - 1:23, 1:25, 2:2, 2:4
Ohio [1] - 4:13
Oklahoma [21] - 4:3, 4:17, 4:24, 5:1, 7:5,

8:4, 8:23, 10:11, 13:18, 20:13, 20:16, 22:12, 24:7, 24:10, 25:11, 25:12, 25:15, 26:2, 26:10, 27:15
OKLAHOMA [1] - 1:3
ON [1] - 2:11
one [10] - 6:2, 8:22, 11:11, 14:3, 17:9, 23:9, 23:13, 23:14, 30:16
ones [2] - 11:23, 32:24
opportunity [6] - 22:9, 22:11, 24:23, 24:24, 24:25
opposition [2] - 14:12, 14:13
order [7] - 10:21, 11:20, 12:3, 17:18, 22:5, 32:12, 34:22
orders [1] - 11:23
otherwise [1] - 22:12
ought [1] - 17:21
outstanding [1] - 28:11
overall [1] - 31:25
overlap [5] - 17:15, 17:25, 21:10, 29:22, 30:1
overlapping [1] - 29:18
overseen [1] - 16:3
overstay [1] - 31:3
OWEN [1] - 3:8

**P**

pages [3] - 3:15, 31:14, 34:14
panel [1] - 14:18
papers [2] - 13:6, 31:9
paramount [1] - 32:24
Park [1] - 2:3
parse [1] - 19:13
part [5] - 7:9, 18:24, 24:8, 30:6, 31:8
particularized [3] - 18:13, 18:20, 32:6
particularly [1] - 15:15
parties [2] - 21:7, 23:8
parties' [1] - 31:19
PARTY [1] - 2:9
party [3] - 6:5, 6:21, 21:8
past [2] - 25:6, 28:13
paths [1] - 21:5
PC [1] - 1:19
pendency [1] - 30:15
pending [5] - 23:9, 29:19, 30:2, 30:10,

30:16
PENSION [1] - 1:3
pension [1] - 6:23
Pension [1] - 4:3
people [4] - 14:22, 15:20, 24:21, 27:16
PEPPERMAN [8] - 3:4, 22:24, 23:3, 23:16, 27:8, 29:16, 33:23, 34:12
Pepperman [2] - 5:19, 22:23
perfectly [1] - 6:17
perhaps [1] - 26:11
period [3] - 24:16, 29:23, 29:24
permission [1] - 5:7
person [2] - 32:12, 32:13
perspective [3] - 17:20, 31:8, 31:17
pharmaceuticals [1] - 32:23
phrase [2] - 13:13, 18:4
picked [1] - 34:23
piece [1] - 15:18
pieces [2] - 11:13, 15:12
places [1] - 30:4
plaintiff [5] - 1:5, 5:5, 21:23, 21:24
plaintiffs [6] - 4:11, 5:12, 22:11, 28:22, 30:7, 31:9
PLAINTIFFS [2] - 1:15, 2:14
plaintiffs' [1] - 31:21
plane [3] - 15:23, 16:23
planes [2] - 21:4, 33:3
planning [2] - 24:2, 24:3
plead [1] - 32:5
pleading [3] - 18:13, 27:24, 33:8
pled [1] - 25:19
plenary [10] - 8:21, 9:1, 10:20, 10:25, 13:2, 19:11, 20:16, 21:11, 22:7
Podolsky [3] - 4:12, 5:25, 25:10
PODOLSKY [31] - 1:23, 1:23, 4:12, 4:20, 4:22, 5:24, 6:9, 6:12, 6:15, 6:18, 6:24, 7:13, 7:16, 7:19, 8:6, 9:6, 11:13, 17:17, 19:23, 19:25,

20:2, 20:7, 20:14, 20:19, 20:22, 24:12, 25:5, 25:24, 26:14, 26:20, 27:12
point [12] - 6:5, 6:16, 9:20, 12:11, 12:25, 14:15, 19:15, 21:19, 22:6, 28:6, 28:20, 33:8
pointed [1] - 23:20
points [1] - 31:2
portion [1] - 29:7
position [1] - 24:1
positions [2] - 27:13, 31:22
positive [1] - 11:25
possibility [1] - 9:3
possible [4] - 9:3, 22:6, 22:11, 28:15
possibly [1] - 25:15
potential [2] - 17:24, 23:7
potentially [2] - 8:24, 17:13
practical [1] - 26:5
practice [1] - 30:3
precedential [1] - 8:5
preclusive [7] - 8:25, 9:4, 9:13, 10:9, 10:23, 11:8, 17:8
prediction [1] - 30:22
preferential [1] - 12:18
prejudice [1] - 10:5
premier [1] - 9:21
prepared [1] - 24:1
present [5] - 11:3, 14:10, 16:18, 16:19, 16:25
presentations [1] - 13:21
presumably [1] - 8:8
price [1] - 23:18
principal [1] - 31:21
private [2] - 29:1, 33:18
problem [4] - 9:15, 15:21, 17:12, 28:10
proceed [2] - 12:21, 28:15
proceeding [3] - 6:8, 6:10, 25:14
proceedings [2] - 11:11, 35:15
process [17] - 10:21, 10:22, 12:2, 12:4, 13:2, 16:22, 17:13, 19:18, 20:20, 21:20, 22:2, 22:4, 22:5, 22:13, 24:6, 24:9

**processes** [1] - 19:19
**produce** [3] - 12:9, 12:10, 12:13
**produced** [5] - 13:4, 16:13, 24:5, 24:8, 25:13
**product** [1] - 32:24
**production** [6] - 11:15, 11:16, 11:18, 12:9, 25:7, 26:8
**progeny** [1] - 18:14
**program** [2] - 16:7, 16:8
**proof** [1] - 33:9
**properly** [3] - 7:23, 16:2
**proposed** [1] - 4:12
**prove** [1] - 32:12
**proven** [1] - 32:15
**providing** [2] - 24:6, 24:9
**PSLRA** [3] - 27:25, 30:11, 33:9
**public** [4] - 10:13, 14:16, 14:21, 28:7
**PUBLIC** [2] - 1:23, 2:2
**publicly** [1] - 14:23
**purpose** [1] - 6:13
**purposes** [1] - 29:6
**pursuant** [1] - 24:5
**pursue** [1] - 8:12
**pursuit** [1] - 23:7
**push** [2] - 21:15, 24:25

**Q**

**quantum** [1] - 32:16
**questions** [1] - 23:24
**quibbling** [1] - 21:4
**quick** [1] - 12:2
**quickly** [1] - 26:6
**quite** [3] - 14:11, 19:3, 19:12
**quote** [2] - 32:6, 32:7

**R**

**Radford** [1] - 1:20
**raise** [1] - 31:2
**raised** [1] - 29:17
**RALPH** [1] - 1:15
**Re** [1] - 4:4
**RE** [1] - 1:9
**reached** [1] - 15:8
**reaches** [2] - 14:3, 14:5
**real** [6] - 10:1, 10:4, 10:8, 10:22, 28:10, 33:12
**realizing** [1] - 10:1

**really** [6] - 4:8, 6:20, 13:1, 19:5, 26:9, 26:12
**reason** [5] - 11:17, 17:2, 17:25, 20:15
**reasonable** [1] - 33:1
**reassigned** [1] - 30:15
**REBBECA** [1] - 1:23
**REBECCA** [1] - 3:12
**Rebecca** [1] - 35:14
**receipt** [1] - 31:24
**recess** [1] - 35:1
**recognize** [1] - 27:23
**recognizes** [1] - 12:3
**record** [10] - 4:11, 10:12, 10:24, 14:21, 17:5, 18:1, 27:18, 35:3, 35:15
**records** [10] - 10:15, 10:21, 11:19, 11:21, 13:3, 14:17, 16:11, 16:14, 22:14, 28:4
**recover** [2] - 23:18, 23:21
**red** [1] - 16:5
**reduced** [1] - 30:5
**references** [3] - 13:19, 14:11, 14:12
**referring** [1] - 12:3
**reflexively** [1] - 34:13
**regard** [1] - 34:4
**Reilly** [5] - 5:2, 5:4, 19:21, 20:9, 21:12
**REILLY** [3] - 2:9, 2:10, 5:3
**Reilly's** [8] - 7:20, 18:5, 18:9, 18:23, 18:24, 19:6, 20:5, 21:9
**relates** [1] - 28:5
**relationship** [2] - 12:7, 12:17
**relevant** [2] - 14:7, 17:16
**remember** [1] - 16:19
**replead** [1] - 25:21
**report** [4] - 25:7, 26:7, 26:14, 26:17
**REPORTER** [3] - 3:12, 35:12, 35:21
**reporting** [5] - 14:24, 15:24, 15:25, 31:22, 32:8
**reports** [5] - 24:18, 31:24, 31:25, 32:9, 32:10
**represent** [1] - 6:23
**representing** [1] - 22:19
**reputation** [1] - 28:12

**request** [1] - 22:25
**require** [1] - 33:9
**requirement** [2] - 9:2, 18:20
**requirements** [2] - 27:24, 28:2
**resolve** [3] - 12:18, 12:19, 12:21
**resolved** [3] - 27:11, 28:12, 33:20
**respect** [4] - 20:3, 21:19, 26:10, 30:25
**respects** [2] - 29:8, 32:17
**response** [1] - 23:23
**responsibility** [1] - 26:20
**restriction** [1] - 19:18
**RETIREMENT** [6] - 1:4, 1:24, 1:24, 2:3, 2:3, 2:11
**retirement** [3] - 4:13, 6:24, 7:1
**Retirement** [1] - 4:3
**reverse** [1] - 21:20
**reviewing** [1] - 33:11
**revisit** [1] - 34:1
**Rhode** [1] - 7:6
**RHODE** [2] - 2:10, 2:12
**RICHARD** [1] - 3:4
**Richmond** [1] - 1:21
**Rick** [1] - 5:19
**rigid** [1] - 33:8
**risk** [8] - 9:24, 9:25, 10:1, 10:4, 10:6, 10:8, 10:22
**Road** [2] - 1:24, 2:6
**road** [2] - 17:20, 29:9
**ROBBINS** [1] - 2:15
**Robbins** [1] - 5:6
**robust** [3] - 10:24, 17:4, 22:15
**Room** [1] - 3:6
**room** [1] - 4:7
**routed** [1] - 15:3
**RPR** [1] - 3:12
**RUDMAN** [1] - 2:15
**rule** [2] - 12:11, 31:16
**Rule** [2] - 18:13, 27:24
**ruling** [2] - 9:12, 30:4
**run** [2] - 21:16, 21:17

**S**

**sadly** [1] - 19:12
**safe** [2] - 33:1, 33:2
**Safety** [3] - 13:17, 13:19, 13:24
**safety** [19] - 14:1,

14:25, 15:3, 15:14, 15:17, 15:20, 15:23, 16:10, 16:11, 21:4, 21:5, 31:24, 31:25, 32:9, 32:10, 32:22, 32:24
**San** [1] - 1:17
**satisfied** [7] - 17:10, 20:17, 25:8, 29:8, 32:21, 33:7, 33:21
**satisfy** [1] - 33:11
**saved** [1] - 27:4
**saw** [2] - 6:1, 17:17
**scenario** [1] - 9:19
**schedule** [1] - 8:7
**scheduling** [1] - 34:21
**scienter** [7] - 28:8, 31:2, 31:20, 31:21, 32:5, 32:15
**Scott** [8] - 8:23, 10:11, 20:16, 20:24
**SCOTT** [2] - 1:16
**scrupulous** [1] - 33:4
**SEC** [5] - 28:18, 28:23, 29:7, 29:10, 30:21
**second** [1] - 30:11
**Section** [5] - 23:6, 23:9, 23:17, 24:5, 24:9
**SECURITIES** [1] - 1:9
**securities** [11] - 11:1, 18:6, 21:22, 23:2, 23:14, 27:20, 28:18, 29:18, 29:20, 30:21
**Securities** [1] - 4:5
**see** [10] - 5:10, 17:12, 26:6, 26:9, 26:15, 26:18, 27:5, 28:13, 28:24, 31:13
**seeing** [1] - 18:10
**seek** [1] - 11:6
**seeking** [8] - 10:14, 13:1, 13:3, 13:10, 16:12, 16:15, 16:16, 23:18
**sees** [1] - 18:3
**SELLERS** [1] - 2:19
**sense** [4] - 4:8, 21:14, 27:3, 29:10
**sent** [1] - 12:8
**September** [6] - 1:10, 25:3, 25:6, 26:5, 29:25, 34:11
**series** [1] - 11:23
**serious** [1] - 15:21
**set** [6] - 9:18, 11:5, 11:7, 11:20, 12:23, 16:21
**sets** [1] - 25:20
**settled** [2] - 32:3,

33:16
**settlement** [1] - 29:6
**Seventh** [1] - 30:14
**several** [2] - 10:25, 30:18
**shame** [1] - 28:10
**share** [3] - 20:9, 20:12, 23:2
**shared** [3] - 19:20, 19:23, 19:25
**shareholder** [4] - 5:4, 7:2, 7:9, 23:14
**shareholders** [4] - 7:21, 8:10, 8:11, 8:14
**short** [1] - 24:16
**shot** [1] - 11:4
**show** [1] - 11:23
**side** [2] - 27:5, 29:8
**sIGNATURE** [1] - 35:21
**Silverside** [1] - 2:6
**similar** [3] - 11:1, 18:3, 21:3
**simple** [1] - 28:4
**single** [1] - 32:25
**sit** [3] - 5:14, 28:14, 33:17
**six** [4] - 14:11, 14:13, 29:23, 29:25
**size** [2] - 30:5, 31:19
**SKILLING** [1] - 1:19
**smaller** [1] - 12:23
**sometimes** [2] - 19:19, 29:5
**somewhat** [1] - 4:9
**sorry** [2] - 5:16, 20:12
**sorts** [1] - 9:22
**speaks** [1] - 28:4
**special** [1] - 33:18
**specific** [1] - 12:2
**speculative** [1] - 10:5
**spent** [1] - 19:12
**spokesperson** [1] - 22:21
**Square** [1] - 3:13
**stage** [1] - 33:8
**stand** [1] - 27:8
**standard** [1] - 32:11
**start** [1] - 13:16
**started** [2] - 13:8, 34:8
**state** [1] - 30:18
**STATE** [3] - 1:24, 2:3, 2:10
**State** [1] - 9:9
**statements** [4] - 18:12, 18:16, 31:10, 31:12
**states** [1] - 7:6

**STATES** [2] - 1:1, 1:13
**stating** [1] - 10:22
**station** [1] - 14:19
**stay** [10] - 6:6, 6:13, 6:19, 22:10, 23:25, 24:22, 25:11, 26:2, 26:25, 30:11
**stayed** [1] - 34:5
**stays** [1] - 10:20
**STENOGRAPHIC** [1] - 3:17
**STEVEN** [1] - 2:18
**Steven** [1] - 5:11
**still** [2] - 12:14, 33:8
**stock** [1] - 23:19
**stockholder** [1] - 30:18
**stockholders** [5] - 21:9, 23:7, 23:17, 23:21, 24:8
**STONESTREET** [1] - 3:12
**Stonestreet** [2] - 35:14, 35:20
**Street** [3] - 2:10, 3:2, 3:5
**strength** [3] - 13:10, 13:11, 13:12
**strong** [3] - 21:18, 25:19, 28:8
**stronger** [1] - 25:25
**structure** [1] - 31:23
**structures** [1] - 32:8
**subheadings** [1] - 31:11
**submit** [1] - 32:3
**substantial** [7] - 8:13, 10:6, 11:15, 11:16, 11:18, 12:9, 25:6
**substantially** [2] - 21:3, 30:5
**SUCHAROW** [1] - 2:22
**sufficiency** [1] - 18:10
**sufficient** [4] - 17:11, 18:11, 19:11, 28:7
**suggests** [1] - 33:13
**Suite** [10] - 1:17, 1:20, 1:24, 2:3, 2:7, 2:11, 2:16, 2:20, 3:2, 3:9
**Sullivan** [1] - 5:20
**SULLIVAN** [2] - 3:5, 3:8
**supports** [1] - 28:5
**supposed** [1] - 16:10
**Supreme** [1] - 9:11
**Susan** [1] - 4:12
**SUSAN** [2] - 1:23, 1:23
**suspect** [1] - 32:21
**sustain** [1] - 21:13
**sustaining** [1] - 18:23

**switch** [1] - 27:13
**SYSTEM** [6] - 1:4, 1:24, 1:25, 2:3, 2:4, 2:12
**system** [7] - 14:25, 15:14, 15:17, 15:20, 15:25, 16:1
**System** [1] - 4:3
**systems** [4] - 4:13, 6:24, 7:1, 14:1

## T

**table** [1] - 4:16
**Teachers** [1] - 9:9
**TEACHERS** [2] - 1:24, 2:3
**television** [1] - 14:18
**terms** [6] - 23:3, 23:10, 24:4, 26:8, 29:16
**terribly** [1] - 32:20
**testimony** [2] - 14:17
**Tharp's** [1] - 30:4
**THE** [62] - 1:1, 1:13, 1:15, 1:23, 2:2, 2:9, 2:10, 2:11, 2:14, 3:1, 4:6, 4:17, 4:21, 4:23, 5:2, 5:9, 5:13, 5:22, 5:25, 6:11, 6:14, 6:16, 6:19, 7:1, 7:14, 7:18, 8:1, 9:5, 11:10, 17:10, 19:17, 19:24, 20:1, 20:6, 20:12, 20:18, 20:21, 22:18, 22:21, 22:25, 23:13, 24:11, 25:3, 25:10, 25:23, 26:1, 26:17, 26:23, 27:3, 27:10, 27:13, 27:18, 27:20, 29:2, 29:5, 29:15, 31:5, 32:11, 33:24, 34:6, 34:17, 34:20
**theories** [2] - 10:18, 13:5
**thereafter** [1] - 33:4
**therefore** [4] - 8:14, 13:15, 18:10, 18:24
**they've** [3] - 12:10, 12:13, 22:15
**thinking** [2] - 18:10, 22:9
**three** [1] - 11:13
**threshold** [6] - 8:10, 8:18, 9:2, 17:7, 17:24, 18:15
**timeframe** [2] - 11:11, 25:12
**timing** [2] - 29:10, 30:23
**today** [4] - 4:15, 19:6,

26:8, 34:23
**together** [2] - 21:15, 21:17
**TOLL** [3] - 2:18, 2:19, 5:10
**Toll** [1] - 5:11
**tons** [1] - 28:5
**touched** [2] - 19:5, 19:7
**Tower** [1] - 2:20
**track** [1] - 21:16
**traditionally** [1] - 6:2
**TRANSCRIPT** [1] - 1:12
**transcript** [2] - 9:17, 35:15
**TRANSCRIPTION** [1] - 3:17
**TREASURER** [1] - 2:11
**trial** [3] - 11:20, 12:11, 31:15
**true** [2] - 19:2, 21:5
**try** [6] - 21:15, 21:16, 21:17, 28:14, 33:17, 33:20
**trying** [6] - 6:6, 7:9, 8:1, 19:13, 20:10
**two** [17] - 4:9, 4:13, 6:15, 6:24, 7:1, 11:13, 12:7, 15:12, 16:9, 21:1, 23:5, 23:12, 29:21, 29:22, 31:1, 33:3
**type** [1] - 33:16
**types** [1] - 27:25

## U

**U.S** [1] - 3:12
**ultimately** [3] - 7:10, 7:15, 26:11
**under** [6] - 8:7, 18:7, 18:13, 22:2, 27:24, 32:3
**underlie** [1] - 14:7
**underlying** [6] - 11:19, 13:12, 13:21, 18:3, 21:2, 22:14
**understood** [3] - 17:18, 25:5
**UNITED** [2] - 1:1, 1:13
**Up** [1] - 16:8
**up** [16] - 7:22, 9:10, 10:9, 14:25, 15:3, 15:4, 15:7, 16:5, 16:8, 16:9, 17:8, 19:3, 30:14, 30:25, 31:10, 34:23

## V

**VA** [4] - 1:21, 1:25, 2:11, 3:3
**Vaala** [1] - 33:17
**vacate** [1] - 4:20
**verdict** [1] - 31:14
**versus** [1] - 4:3
**Villegas** [1] - 5:12
**VILLEGAS** [1] - 2:22
**VIRGINIA** [1] - 1:1
**Virginia** [2] - 3:13, 27:15

## W

**Walmart** [2] - 9:10, 10:2
**wants** [5] - 8:25, 22:7, 24:14, 26:21, 29:7
**Washington** [2] - 2:20, 3:10
**ways** [2] - 16:9, 17:22
**weaknesses** [1] - 27:6
**weeks** [3] - 29:23, 30:1, 34:23
**welcome** [1] - 31:3
**West** [1] - 2:20
**whistleblower** [4] - 14:9, 15:2, 16:5
**whistleblowers** [4] - 14:12, 14:13, 14:16, 32:2
**whittled** [1] - 12:23
**whittled-down** [1] - 12:23
**whole** [2] - 6:5, 10:6
**Williams** [1] - 27:14
**WILLIAMS** [4] - 1:19, 1:19, 27:14, 27:19
**willing** [1] - 6:17
**Wilmington** [1] - 2:8
**wise** [1] - 33:17
**won** [1] - 33:24
**wonder** [1] - 34:2
**WOODS** [1] - 3:1
**words** [2] - 8:10, 19:21
**written** [4] - 17:11, 26:14, 26:17, 32:18

## Y

**Yates** [1] - 32:4
**year** [1] - 30:7
**York** [6] - 2:4, 2:17, 2:19, 2:23, 3:6, 3:9
**you-all** [3] - 4:21, 6:4, 26:18

## Z

**Zurn** [1] - 13:8
**Zweig** [1] - 5:6
**ZWEIG** [1] - 2:15