**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HANG LI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SPIRIT AEROSYSTEMS HOLDINGS, INC., TOM GENTILE III, and MARK J. SUCHINSKI, <br><br> Defendants. | Case No. 1:23-cv-03722-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   NATURE OF THE ACTION ................................................................................... 3

III.  PROCEDURAL HISTORY...................................................................................... 4

      A.    The Initial Complaint and Lead Plaintiff Appointment Process............................ 4

      B.    Lead Counsel's Investigation and Amended Complaints....................................... 4

      C.    The Motion to Dismiss the SAC............................................................................ 5

      D.    Mediation Efforts and Settlement Negotiation ..................................................... 6

IV.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)...................... 7

V.    ARGUMENT............................................................................................................. 9

      A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors
            Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors ........................... 9

            1.    Plaintiffs and Lead Counsel Adequately Represented the Class ................ 9

            2.    The Settlement is the Result of Arm's Length Negotiations .................... 10

            3.    The Settlement is a Very Good Result in Light of its Benefits and
                  the Risks of Continued Litigation............................................................. 11

                  a.    Complexity, Expense and Duration of Litigation......................... 11

                  b.    Establishing Liability................................................................... 12

                  c.    Risks to Proving Loss Causation and Damages........................... 13

                  d.    Risks of Maintaining Class Action Status .................................. 14

                  e.    Range of Reasonableness in Light of the Best Possible
                        Recovery and Attendant Risks of Litigation................................ 15

            4.    Rule 23(e)(2)(C)(iii)-(iv) ........................................................................ 15

            5.    The Settlement Treats all Settlement Class Members Equitably.............. 17

            6.    The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of
                  Preliminary Approval................................................................................ 17

B.     Certification of the Settlement Class is Appropriate ........................................... 19

        1.     The Settlement Class Satisfies the Requirements of Rule 23(a)............... 19

        2.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 21

        3.     The Court Should Appoint Lead Counsel as Class Counsel..................... 23

C.     The Court Should Approve the Proposed Form and Method of Notice to the Settlement Class................................................................................................. 24

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................... 25

VII.     CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................................................................ 1

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................. 22, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ...................................................................................... 9, 21

*Beach v. JPMorgan Chase Bank, N.A.*,
2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) .............................................................. 8

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ..................................................................................... 20

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................... 14

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................................................... 24

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................... 13, 17

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................................. 8, 11

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................................................................................... 10

*Davenport v. Elite Model Mgmt. Corp.*,
2014 WL 12756756 (S.D.N.Y. May 12, 2014) ........................................................ 19

*Dura Pharms., Inc., v. Broudo*,
544 U.S. 336 (2005) .................................................................................................. 13

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entertainment Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) .............................................................................. 20

*In re "Agent Orange" Prods. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................... 24

*In re Allergan PLC Sec. Litig.*,
   2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) ..................................................................... 19

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................... 18, 22

*In re Bear Stearns Cos., Inc. Sec. Deriv. & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................................... 10, 17

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................................ 17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................................... 9

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ..................................................................... 14

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ....................................................................................... 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................................................................ 13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................................................... 11, 12, 14

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 18

*In re IPO Sec. Litig.*,
   544 F. Supp. 2d 277 (S.D.N.Y. 2008) ................................................................................ 13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................... 14, 22

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................... 17

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................ 18

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................ 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 10

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 Fed. Appx. 760 (2d Cir. 2020) ..................................................................... 9, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................................. 8

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................. 19

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................................... 10

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..................................................................... 20

*In re Veeco Instr., Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................... 22

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................................. 22

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................... 21

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................... 2

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................... 20

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................... 16

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*,
  772 F.3d 111 (2d Cir. 2014) ................................................................................. 19

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ........................................................ 13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................. 23

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ..................................................................................... 21

*Rodriguez v. CPI Aerostructures, Inc.*,
    2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) .......................................................... 19

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010) ....................................................................................... 22

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ...................................................................................... 2

*Steamfitters Local 449 Pension Plan v. AT&T Inc.*,
    2022 WL 17587853 (2d Cir. Dec. 13, 2022) ........................................................... 12

*Venkataraman v. Kandi Techs. Grp., Inc.*,
    2024 WL 4345571 (S.D.N.Y. Sept. 30, 2024) ......................................................... 19

STATUTES

15 U.S.C. § 78u-4 ............................................................................................................. 1

15 U.S.C. §§ 78j(b), 78t(a) .............................................................................................. 4

RULES

FED. R. CIV. P. 23 ..................................................................................................... *passim*

REGULATIONS

17 C.F.R. § 240.10b-5 ....................................................................................................... 4

## I.    PRELIMINARY STATEMENT

The proposed Settlement,[1] which provides for a cash payment of $29.2 million in exchange for the resolution of the Action, represents a very good result for the Settlement Class,[2] particularly when juxtaposed against the significant hurdles that Plaintiffs would have needed to overcome to prevail in this complex securities fraud litigation.  In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability.  The risk of losing was very real and it was greatly enhanced by the fact that they would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[3]  Indeed, of the securities cases between January 2015 and December 2024 where a decision was reached on a motion to

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated August 4, 2025 (the "Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of Garth Spencer.  All references to "Ex. _" are to exhibits to the Spencer Declaration.

[2] The "Settlement Class" means all persons and entities who purchased the publicly-traded Class A common stock of Spirit AeroSystems Holdings, Inc. between April 8, 2020 and September 7, 2023, both dates inclusive, and who were damaged thereby.  Excluded from the Settlement Class are:  (i) Defendants, the officers and directors of Spirit at all relevant times, members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest; (ii) any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (iii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) and (ii) hereof.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

[3] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

dismiss, "61% of motions were granted (with or without prejudice) while 39% were denied either in part or in full." *See* Ex. 2 (Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024 Full-Year Review (NERA, Jan. 22, 2025)) ("NERA Report"), at 17 (Fig. 15). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Despite these risks, Plaintiffs were able to obtain a settlement that will resolve all claims against Defendants[4] in exchange for a cash payment of $29,200,000 (the "Settlement Amount") for the benefit of the Settlement Class. This represents a recovery of approximately 1.9% of the *maximum* recoverable damages related to the pending claims.[5] This recovery percentage exceeds the 1.3% median settlement value for securities class actions with comparable maximum damages. *See* Ex. 2 (NERA Report) at 26-27 (Fig. 23-24). Accordingly, the Settlement is substantively fair.

The Settlement was also achieved through a procedurally fair process. By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. Lead Counsel, *inter alia*: conducted an extensive investigation into Spirit's allegedly wrongful acts; worked with an investigator to locate and interview relevant former employees; consulted with experts in the fields of loss causation and

---

[4] Defendants are Spirit AeroSystems Holdings, Inc. ("Spirit" or the "Company"), Tom Gentile III and Mark J. Suchinski (collectively, "Individual Defendants"; together with Spirit, "Defendants"; and together with Plaintiffs, the "Parties").

[5] The Settlement Amount is approximately 2.9% of Lead Counsel's estimate of reasonably recoverable damages, *see infra* Sec. V.A.3.e.

damages; drafted a comprehensive Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC") and Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC"); engaged in substantial briefing opposing Defendants' motion to dismiss; participated in a lengthy mediation process under the auspices of a well-respected mediator of complex cases—former United States District Court Judge Layn R. Phillips; and conducted significant informal discovery to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle to resolve the Action, which included review and analysis of over 59,000 pages of documents produced by Spirit concerning the matters alleged in the SAC, and an interview with a senior Spirit employee.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced and well-respected neutral.  As discussed in greater detail below, Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class.  Accordingly, Plaintiffs respectfully request that the Court: (i) grant the Settlement preliminary approval; (ii) certify the proposed Settlement Class; (iii) approve the proposed form and manner of giving notice of the Settlement; and (iv) schedule a final Settlement Hearing.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements about the quality and safety of Spirit's products, to assuage investors' concerns about the Boeing 737 MAX. ECF No. 30 at ¶¶4-5.[6] Plaintiffs allege that throughout the Settlement Class Period, Defendants made numerous statements indicating to investors that Spirit was dedicated to manufacturing quality products, that its manufacturing

---

[6] Citations to "¶_" refer to paragraphs in the SAC (ECF No. 30).

processes ensured that products were shipped without defects, and that, after a tail fin fitting defect led to Boeing pausing deliveries of the 737 MAX in April 2023, Spirit was shipping conforming products. ¶49. Plaintiffs allege that Defendants concealed that: (i) Spirit suffered from systemic manufacturing issues that were severe and prolonged enough to cause Boeing to place Spirit on probation; and (ii) Spirit identified a mis-drilled hole defect on the 737 MAX aft pressure bulkhead in October 2022, months before this issue was disclosed to investors, which led to significant costs and production delays. ¶50. As a result, Spirit's publicly traded common stock was artificially inflated, and the price declined when the truth was revealed over time. ¶¶110-178.  Defendants deny Plaintiffs' allegations and claims, and have vigorously defended against the lawsuit.

## III.    PROCEDURAL HISTORY

### A.    The Initial Complaint and Lead Plaintiff Appointment Process

On May 3, 2023, Lead Plaintiff Hang Li initiated the Action by filing a putative class action complaint in the United States District Court for the Southern District of New York (the "Court"), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. ECF No. 1.  By Order dated October 20, 2023, the Court appointed Hang Li to serve as Lead Plaintiff and approved his selection of Glancy Prongay & Murray LLP ("GPM") and Holzer & Holzer, LLC ("Holzer") to serve as Lead Counsel for the proposed class. ECF No. 22. Lead Counsel engaged Block & Leviton LLP as additional counsel for Plaintiffs and the proposed class.

### B.    Lead Counsel's Investigation and Amended Complaints

Following their appointment, Lead Counsel conducted a comprehensive investigation into Spirit's allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Spirit's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) press releases,

4

research reports prepared by securities and financial analysts, news articles and other publicly available material concerning Spirit, and (c) Spirit's investor call transcripts; and (ii) retaining and working with a private investigator to locate and interview former Company employees. Lead Counsel also consulted with an expert on the subjects of loss causation and damages.

On December 19, 2023, Lead Plaintiff and additional plaintiff Alex Freeman filed the FAC, asserting claims against all Defendants under Section 10(b) of the Exchange Act and against the Individual Defendants under Section 20(a) of the Exchange Act. ECF No. 25. The FAC alleged that Defendants materially misled investors regarding the quality and safety of Spirit's products including 737 MAX aircraft fuselages. The FAC further alleged that the prices of Spirit's publicly-traded Class A common stock were artificially inflated during the class period as a result of Defendants' allegedly false and misleading statements and declined when the truth was revealed.

Defendants filed a motion to dismiss the FAC on February 20, 2024. ECF Nos. 26-29. In response, Lead Plaintiff and additional plaintiffs Mike Drumright and Marco Amiotti filed and served the SAC on March 12, 2024. ECF No. 30. Like the FAC, the SAC alleged, among other things, that Defendants materially misled investors regarding the quality and safety of Spirit's products including 737 MAX aircraft fuselages, and that the prices of Spirit's publicly-traded Class A common stock were artificially inflated during the class period as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed. The SAC added various allegations to the FAC, including new allegations based on: (i) additional interviews with former Spirit employees; and (ii) public reports following the Alaska Airlines Flight 1282 door plug blowout incident. Defendants deny Plaintiffs' allegations and claims.

### C.    The Motion to Dismiss the SAC

On May 13, 2024, Defendants moved to dismiss the SAC. ECF Nos. 36-39. Therein, Defendants argued, among other things, that the challenged statements about Spirit's quality and

customer service goals were not actionable because they were nonactionable puffery and/or were not misleading, and that Spirit fully disclosed the allegedly concealed risks. ECF No. 37 at 10-15. In addition, they argued that Spirit's risk factors and other statements about COVID-19, the tail-fin fitting issue, and the mis-drilled-holes issue were not misleading. *Id.* at 15-19. Defendants also contended that Plaintiffs failed to plead scienter and loss causation. *Id.* at 22-30.

Plaintiffs filed their opposition to Defendants' motion on July 12, 2024. ECF Nos. 41-42. Plaintiffs argued, among other things, that Defendants concealed Spirit's systemic quality problems from the public, made misleading statements about Spirit's quality control system, and falsely lauded its ability to produce conforming products. ECF No. 41 at 2. Plaintiffs also argued that scienter was adequately pled based on former employee interviews, buttressed by media reports and multiple government investigations proceeding in parallel, and that the truth was revealed to investors through a series of corrective disclosures and materialized risks. *Id.* at 23-35. On August 12, 2024, Defendants filed their reply papers. ECF Nos. 43-45.

### D.    Mediation Efforts and Settlement Negotiation

While Defendants' motion to dismiss remained pending, on November 26, 2024, Plaintiffs' Counsel and Defendants' Counsel participated in a full-day, in-person mediation session with their agreed mediator, former United States District Court Judge Layn R. Phillips. In advance of that session, the Parties exchanged, and provided to Judge Phillips, detailed mediation statements and exhibits, which addressed the issues of liability and damages, and the strengths and weaknesses of the arguments advanced by the Parties on the pending motion to dismiss, as well as the substantive factual issues that would determine the outcome of the case if the matter proceeded to summary judgment or trial. The session ended without an agreement being reached, however, Judge Phillips continued to work with the Parties over the following weeks. After subsequent negotiations, Judge Phillips made a double-blind mediator's recommendation to resolve the Action for $29,200,000 in

6

cash for the benefit of the Settlement Class. The Parties accepted Judge Phillips' proposal.

The agreement was memorialized in a term sheet (the "Term Sheet") dated January 22, 2025, after further negotiations between the Parties. The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $29,200,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

The Parties met and conferred concerning Defendants' provision of discovery to enable Plaintiffs to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle. On March 4, 2025, the Parties entered a stipulation providing for confidential treatment of the discovery materials produced by Defendants. From March 6, 2025 to April 25, 2025, Defendants produced over 59,000 pages of documents concerning the matters alleged in the SAC. On May 7, 2025, Defendants made available a senior Spirit employee for an interview with Plaintiffs' Counsel to discuss similar topics. After evaluating the discovery produced, Plaintiffs' Counsel concluded that it supports the fairness, reasonableness, and adequacy of the Parties' agreement in principle. The Parties continued to negotiate the Stipulation, which was executed on August 4, 2025.

## IV.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

A class action settlement must be presented to the Court for approval, and it should be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2)—which governs final approval—requires

7

courts to consider the following questions in determining whether a proposed settlement is fair,

reasonable, and adequate:

     (A)    have the class representatives and class counsel adequately represented the class;
     (B)    was the proposal negotiated at arm's length;
     (C)    is the relief provided for the class adequate, taking into account:
           (i)    the costs, risks, and delay of trial and appeal;
           (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
           (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
           (iv)    any agreement required to be identified under Rule 23(e)(3); and
     (D)    does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors" traditionally

considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Second Circuit's

traditional factors utilized to evaluate the propriety of a class action settlement (certain of which

overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[7] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan*

*Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on

factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed

Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well

---

[7] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

as the relevant, non-duplicative *Grinnell* factors.

## V.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any interests antagonistic to the interests of other class members and whether the representatives have an interest in vigorously pursuing the claims of the class." *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Plaintiffs diligently oversaw the litigation and communicated with Plaintiffs' Counsel concerning case developments, including settlement. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

9

Second, Plaintiffs retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* ECF Nos. 10-4, 10-5 (GPM and Holzer firm résumés). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims. The Parties were acutely aware of the strengths and weaknesses of the case, including the motion to dismiss arguments and the key factual issues that would determine the outcome if the case proceeded to summary judgment or trial, prior to settling the Action (*see* Sec. III., *supra*) (detailing Lead Counsel's extensive investigation into the Company, briefing on the motion to dismiss, and hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

### 2.    The Settlement is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Here, as set forth in detail above (Sec. III.D., *supra*), the Parties engaged in a lengthy mediation process with Judge Phillips. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (approving settlement that is the "product of a mediator's recommendation by Judge Phillips"); *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an

10

experienced and well-regarded mediator of complex securities cases").

### 3. The Settlement is a Very Good Result in Light of its Benefits and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.[8]  As discussed below, each of these factors supports preliminary approval.

### a. Complexity, Expense and Duration of Litigation

This action involved alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe the claims asserted against Defendants have merit.  They acknowledge, however, the expense and duration of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages (as discussed below).  Assuming the class was certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and that Plaintiffs' claims survived summary judgment, litigating the case through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor.  Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class.  *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.").  By contrast, the Settlement provides an

---

[8] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.    Establishing Liability

In considering these factors, "a court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *Id.* at 694. While Lead Counsel believes Plaintiffs' claims have merit, they also recognize substantial obstacles to proving liability. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

At the time the Settlement was reached, the Court had not ruled on Defendants' motion to dismiss. While Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued their statements were not materially false and misleading and/or amounted to inactionable corporate puffery. ECF No. 37 at 10-11 (citing *Steamfitters Local 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853, at *1 (2d Cir. Dec. 13, 2022)). They also contended that Spirit fully disclosed the risk that it might not meet its quality goals. ECF No. 37 at 14. In their Reply, Defendants cited the Court's recently issued decision in *Securities and Exchange Commission v. Solar Winds* as further precedent to support their arguments that Plaintiffs' falsity allegations were insufficient and that dismissal was appropriate. ECF No. 43 at 13 (citing 2024 WL 3461952 (S.D.N.Y. July 18, 2024)).

Moreover, Defendants argued that scienter was not adequately alleged and that Plaintiffs' allegations rest on two facts that were insufficiently pled: (i) the existence of "mis-drilled holes on the 737 MAX aft pressure bulkhead"; and (ii) the existence of "severe and persistent quality problems" at Spirit. ECF No. 37 at 24. Defendants also claimed that Plaintiffs failed to plead a link between the managers who allegedly knew of various issues and the senior officers of Spirit.

12

*Id.* at 28.

While Plaintiffs and Lead Counsel strongly disagreed with Defendants' arguments, they were not meritless, and had the litigation continued there is simply no guarantee that the Court or a jury would have adopted Plaintiffs' view of the case. Indeed, the scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do."); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *5 (S.D.N.Y. Sept. 29, 2022) ("proof of state of mind is inherently difficult").

### c.      Risks to Proving Loss Causation and Damages

Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation."). For example, Defendants argued that Plaintiffs may not recover for stock declines on three of the five alleged disclosure dates (*i.e.*, May 3, 2023, August 2, 2023, and September 7, 2023) because nothing new about the purported fraud was reported on those days. ECF No. 37 at 30. Rather, according to Defendants, the particular defects at issue had already been fully disclosed. Thus, any stock price impact from those events occurred on those earlier dates because "the price of a security in a functioning market accurately reflects its value, given the information available to the public." *Id.* (quoting *In re IPO Sec. Litig.*, 544 F. Supp. 2d 277, 288 (S.D.N.Y. 2008)). Had Defendants prevailed on this loss causation argument, potential class-wide damages would have been significantly reduced.

13

Of course, in order to resolve all disputed issues regarding damages and loss causation, the Parties would have relied on expert testimony. This creates further litigation risk because Plaintiffs could not be certain whether a jury would accept the views of their experts or of the well-qualified experts that Defendants would no doubt be able to present at trial. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 2015 WL 6971424, at \*5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

### d.    Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. V.B., *infra*, the class has not yet been certified, and Plaintiffs are aware that if the case continued to be litigated there is a risk the Court could disagree, or that the class period could be shortened based on decisions related to falsity, scienter, and loss causation. Even if the Court were to certify the class for litigation, there is always a risk that the class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the risks and uncertainty surrounding class certification also support preliminary approval of the Settlement, as Defendants likely would have challenged class certification. *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

14

e.      **Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  Here, the proposed Settlement provides for a cash payment of $29,200,000 for the benefit of the Settlement Class.  This is a very good result considering the significant risks of continued litigation.  Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' best case scenario—the total *maximum* damages potentially available in this Action would be approximately $1.5 billion.  Thus, the $29.2 million Settlement represents a recovery of 1.9%, which exceeds the 1.3% median settlement value for securities class actions with comparable maximum damages. *See* Ex. 2 (NERA Report) at 26-27 (Fig. 23-24). And the Settlement Amount is approximately 2.9% of Lead Counsel's estimate of $1.0 billion of reasonably recoverable damages under an approach that takes into account confounding information released on certain alleged corrective disclosure dates to discount damages attributable to stock price declines on those dates, as reflected in the proposed Plan of Allocation set forth in the Notice (see Ex. A-1 to the Stipulation, at ¶¶56-58).

4.      **Rule 23(e)(2)(C)(iii)-(iv)**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under

15

Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):**  The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  Here, Epiq Class Action & Claims Solutions, Inc., the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 30% on behalf of all Plaintiffs' Counsel to compensate them for the services they have rendered on behalf of the Settlement Class.  A proposed attorneys' fee of up to 30% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33⅓% fee award in securities fraud class action). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Ex. 1 (Stipulation) at ¶16.

16

**Rule 23(e)(2)(C)(iv):**    The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased over a certain threshold of Spirit Class A common stock request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5.    The Settlement Treats all Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed in the proposed Notice (Ex. A-1 to the Stipulation), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors. These factors also support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:**  This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement."  *In re Bear*

*Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012).  Here, Plaintiffs conducted an extensive investigation into Spirit prior to filing the SAC, including, *inter alia*: interviewing former employees; analyzing the Company's myriad SEC filings; and consulting with a loss causation and damages expert.  The Parties submitted substantial briefing relating to the motion to dismiss, and exchanged detailed mediation briefs. Moreover, before finalizing the Stipulation, Plaintiffs obtained over 59,000 pages of documents from Defendants concerning the matters alleged in the SAC, which Lead Counsel analyzed and used to interview a senior Spirit employee, to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle to resolve the Action.  The fact that there has been no formal discovery in the action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions.  *See, e.g., In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

      **The Ability of Defendants to Withstand a Greater Judgment:**  "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval."  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).  In November 2024 Spirit disclosed that "substantial doubt about the Company's ability to continue as a going concern exists." *See* Spirit SEC Form 10-Q filed November 5, 2024, at 12. Therefore, and given the significant time required to get to trial and resolve all appeals in this action, Lead Counsel believes ability to pay considerations favor the Settlement. *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest

that the Settlement is unfair."). Moreover, even factors that are "neutral" do "not preclude the Court from granting final approval." *Davenport v. Elite Model Mgmt. Corp.*, 2014 WL 12756756, at *7 (S.D.N.Y. May 12, 2014).

### B.       Certification of the Settlement Class is Appropriate

#### 1.       The Settlement Class Satisfies the Requirements of Rule 23(a)

**Numerosity:** In the Second Circuit, Rule 23(a)(1)'s numerosity requirement is presumed for classes larger than 40 members and, in securities fraud class actions, it is shown where large numbers of shares were outstanding and traded during the relevant period. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014); *Venkataraman v. Kandi Techs. Grp., Inc.*, 2024 WL 4345571, at *2 (S.D.N.Y. Sept. 30, 2024). Here, according to Spirit's 2020 Form 10-K for the fiscal year 2020, as of February 21, 2021 (during the Settlement Class Period), Spirit had 105,420,191 shares of Class A common stock outstanding. Millions of Spirit shares were traded publicly during the Class Period. ¶338. Thus, while Plaintiffs "do[] not know the exact number of class members, [they] estimate[] that there are thousands of investors residing in geographically disparate areas that would be included in the class, thus rendering joinder impracticable." *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *8 (E.D.N.Y. Nov. 10, 2021). Consequently, numerosity is satisfied. *Id.*

**Common Questions:** Securities class actions easily satisfy commonality where, as here, "plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *6 (S.D.N.Y. Sept. 8, 2021); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (same).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements were materially false and misleading when made; (ii) whether Defendants omitted material information regarding these statements; (iii) whether Defendants acted with

scienter; (iv) whether the price of Spirit Class A common stock was artificially inflated during the Settlement Class Period due to these alleged misrepresentations and omissions; (v) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer economic losses when the truth was revealed; and (vi) whether the Individual Defendants controlled Spirit during the Settlement Class Period. These questions are susceptible to common proof at trial because their resolution does not differ based on the identity of the plaintiff. *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entertainment Holdings, Inc.*, 338 F.R.D. 205, 214 15 (S.D.N.Y. 2021). Thus, commonality is met.

**Typicality:**  Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  The typicality requirement does not require the plaintiff's claims to be identical; rather, the plaintiff must show the claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence, and that the claims of the potential class members share a common question of law or of fact." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008).

Plaintiffs' claims and those of the proposed Settlement Class are based on the exact same alleged misrepresentations and omissions that Defendants made to the investing public during the Settlement Class Period, as well as the Individual Defendants' control of Spirit. Thus, any Settlement Class Member's claim will rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:**  As explained in Sec. V.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives. Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Adequacy is measured by two standards: (i) whether the claims of the proposed class representative conflict with those of the class; and (ii) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation. *See Baffa*, 222 F.3d at 60. Both prongs are met here.

First, for a conflict to defeat class certification, it must be "fundamental." *Patriot*, 828 F. App'x at 764. Where all claims arise from the same alleged wrongful conduct, "[a]ny conflict that may exist is not fundamental." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 344 (S.D.N.Y. 2015). Here, like all Settlement Class Members, Plaintiffs purchased Spirit common stock during the Settlement Class Period, "suffer[ed] the same injury as the class members" as a result of Defendants' alleged material misrepresentations and omissions, and—far from being conflicted—"possess[es] the same interest" in obtaining the best possible recovery. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003). Second, Plaintiffs and Lead Counsel have already more than adequately advanced class interests, and Lead Counsel are qualified, experienced, and able to conduct the litigation (*see* ECF Nos. 10-4, 10-5 (firm résumés)), as they have demonstrated by achieving a favorable Settlement despite the vigorous advocacy of formidable opposing counsel. Accordingly, Rule 23(a)(4) is satisfied.

### 2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

**Common Questions Predominate:**  Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud."

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *In re Veeco Instr., Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). "[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). "[I]f the liability issue is common to the class, common questions are held to predominate." *Marsh & McLennan*, 2009 WL 5178546, at \*11.

Here, there are common questions of law and fact involving violations of the federal securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). Predominance has, therefore, been satisfied. *See AOL Time Warner*, 2006 WL 903236, at \*5 (predominance readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**Class Action is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Securities suits easily satisfy

Rule 23(b)(3)'s superiority requirement because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3.    The Court Should Appoint Lead Counsel as Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). GPM and Holzer were appointed Lead Counsel in October 2023. As set forth in Sec. III., *supra*, Lead Counsel devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. As explained in Sec. V.A.1., *supra*, GPM and Holzer have substantial experience prosecuting securities class actions. Therefore, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class

Counsel. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*5 (C.D. Cal. Oct. 10, 2019) (appointing GPM and Holzer as co-lead counsel for final settlement class).

**C.    The Court Should Approve the Proposed Form and Method of Notice to the Settlement Class**

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail by first-class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation) to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Ex. A-1 to the Stipulation) and the Claim Form (Ex. A-2 to the Stipulation) will be posted on a website to be developed for the Settlement. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online.[9] The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

It is "more than sufficient" to use "a combination of a mailed post card [sic] directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298

---

[9] Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.

F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Accordingly, Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the following schedule for Settlement-related events.  The timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is set. If the Court agrees with the proposed schedule, Plaintiffs request that Court schedule the Settlement Hearing for a date at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") | Not later than 20 business days after entry of Preliminary Approval Order (Prelim. App.  Order ¶7(b)) |
| Publication of Summary Notice | Not later than 10 business days after the Notice Date (Prelim. App. Order ¶7(d)) |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and the application for attorneys' fees and expenses | Not later than 35 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶26) |
| Deadline for receipt of exclusion requests | Not later than 28 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶¶13) |
| Deadline for receipt of objections | Not later than 21 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶17) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶26) |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date (Prelim. App. Order ¶10) |
| Settlement Hearing | At least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter |

## VII.    CONCLUSION

Plaintiffs respectfully request that the Court grant the requested relief.

25

Dated: August 8, 2025                          **GLANCY PRONGAY & MURRAY LLP**


By:  */s/ Garth Spencer*
Joseph D. Cohen (*pro hac vice*)
Garth Spencer (GS-7623)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Email: gspencer@glancylaw.com
Email: jcohen@glancylaw.com

-and-

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Email: glinkh@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer (*pro hac vice*)
211 Perimeter Center Parkway, Suite 1010
Atlanta, GA 30346
Telephone: (770) 392-0090
Email: cholzer@holzerlaw.com

*Lead Counsel for Plaintiffs and the proposed Settlement Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block  (JCB-0387)
Jacob Walker (*pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com

*Additional Counsel for Plaintiffs*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of August 2025, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Garth Spencer*
Garth Spencer